STATE v. ALEXANDER.

1. Where death ensues from an assault and battery, designedly inflicted by another, it is murder. A formed design *to take life* is not necessary to constitute murder.
2. Whether insanity, when interposed as a defence to a charge of murder, is sustained or not, depends upon the preponderance of the evidence. It does not devolve upon the State to establish the sanity of the accused beyond all reasonable doubt.
3. A person who knows the difference between right and wrong—that his act of homicide is morally a crime and punishable by law—cannot relieve himself from the consequences of murder by showing that he acted under an uncontrollable impulse.
4. The prisoner cannot complain of a charge: "That where the killing is proven and no more, the law will imply malice and make the act murder; but when all the facts and circumstances of the killing are in evidence, then the jury must say from the testimony what was the intention with which the act was committed; then it becomes a matter of proof, and there is no longer any implication."

Before WALLACE, J., Pickens, July, 1888.

The defendant, Thomas P. Alexander, was indicted for the murder of his wife, Jane, on the night of March 4, 1888. The deceased was killed with an axe, her body being found with three wounds, one severing the wind-pipe, another cutting the jugular

vein, and a third cutting the neck-bone—either one of which was sufficient to produce instant death.    The defendant had admitted that he killed his wife.    The defence was insanity.    The evidence showed that defendant had something like chronic chorea or St. Vitus's dance, that affected his physical condition.    How far it affected his mind, the witnesses were not agreed.    Some thought him of unsound mind, particularly when angry or laboring under great excitement, and that at such times he was not a morally responsible being—others were of opinion that he was rational at all times.

The judge charged the jury as follows:

Mr. Foreman and Gentlemen: Counsel for the defence have submitted several requests to charge, and ask that I charge these requests to you as the law of this case.    They cover the topics in regard to which I think it necessary to charge you, and may furnish the text of what I have to say to you.    The first request relates to the crime of murder, and, in the opinion of counsel, is the definition of murder, and is in these words: ·

*First.* "That murder is the killing of any person with malice aforethought, either expressed or implied, and unless the jury believe from the testimony that the prisoner killed the deceased from a premeditated design, formed beforehand, to effect her death, they cannot find him guilty of murder."    I cannot charge you that as law, because, in my opinion, that is not the correct definition of murder.    Now, murder is the killing of a human being with malice aforethought.    Malice does not consist alone in a formed design to kill another.    For instance, one man meets another on the street and an altercation ensues, and raises a cane for the purpose of striking him, and strikes the blow and death ensues; that is murder.    He may not have formed a design to kill him, but to strike, and in striking him killed him; that is murder.    That is the difference between the request and my view. All that is necessary is that he should have conceived the design to commit an assault upon him, or an assault and battery upon him, and in consequence of that he dies.    That is murder, whether he meant to kill him or not.    A formed design to *take life* is not necessary to make a killing murder.

*Second.* "That to kill a human being with premeditated de-

sign, the mind must have acted in regard to the killing before it was committed, and the mind must have settled down, resolved, and determined to kill and murder, and that the killing was done with a deliberate mind and formed design of so doing, and unless the jury believes that the accused killed the deceased with such premeditated and formed design so to do, they cannot find him guilty of murder." I cannot charge you that, for the reason that I have already stated.

*Third.* "That if the jury believes from the testimony that the prisoner killed the deceased in an affray under a sudden heat and passion, superinduced by sufficient provocation, and not from premeditated and formed design, the killing is not murder, but manslaughter, unless, under the testimony, the defendant is entitled to an acquittal." That is a correct description of manslaughter. In order to make it a little plainer to you, I will state that man-slaughter is the killing of a human being in sudden heat and passion without malice. That is the description given in our own statutes, and which has been adopted from the old English law books. To kill one in sudden heat and passion and without malice is manslaughter; but that will not give you a clear conception of what manslaughter is, because there may be a sudden heat and passion under the influence of which a man may kill another and the killing would be murder. Because if a man, as I have said, meets another in the street, and kills him in sudden heat and passion produced by words spoken, intending to strike him, that would be murder. So that it is not every killing in sudden heat and passion that is manslaughter, but only such killing as is done in sudden heat and passion produced by legal provocation.

Words are never legal provocation, but when one offers to strike another or throws himself against him, or knocks him off the sidewalk, and in any way rudely offers or produces physical contact by which anger is aroused and the blow is inflicted and death ensues, the law says that is not murder, and his act, while it is not excusable and is less criminal, is not murder, but is manslaughter. Now, I will repeat that no words, no matter how insulting they may be, no, nor how great and sudden the anger they may produce, still, if under passion produced by words only one slays a human being, it is murder and not manslaughter,

because he has killed a human being in sudden heat and passion without legal provocation. Now, taking the sticks away from the fire was no legal provocation. If she struck him or attempted to strike him, and he then struck her and killed her, that would be manslaughter. If you can find any evidence in the case that would support that view, that would be manslaughter.

I am requested to charge you that, to constitute murder, premeditation is necessary. I do charge you that. In this case it is not necessary that this defendant should have formed the day before the design to kill his wife to make it murder, or one or two minutes before. If he formed the purpose to attack her and did attack her in pursuance of that purpose and her death was the result, then that is murder. This, gentlemen, is all in this case of murder and manslaughter.

*Fourth.·* "Every man is presumed to be sane, and, in the absence of testimony engendering a reasonable doubt of sanity, no evidence on the subject need be offered; but whenever the question of sanity is raised and put in issue by the defendant, proving such facts as engender such doubt, it devolves upon the State to remove it, and to establish the sanity of the prisoner to the satisfaction of the jury beyond all reasonable doubt arising out of all the evidence in the case."

*Fifth.* "When the accused makes sufficient proof by the preponderance only of testimony of insanity, to remove the presumption of sanity and other proof that may be offered by the State, the State must show the sanity of the accused at the time of the killing, beyond reasonable doubt."

Now, I do not charge you either one of these, because I do not think either one of them correctly states the law. As has already been stated to you, murder consists in the killing of a human being with malice aforethought, either expressed or implied. Now, there is one necessary constituent of murder that is left out of that definition, and it is this: murder is the killing of a human being by a *sane* person with malice aforethought, expressed or implied. That is really the definition of murder.

In order to convict of murder, the prosecution must prove beyond a reasonable doubt that a human being has been killed, and that the defendant killed him, and that he did it with malice

aforethought. He has got all that to prove. He does not have to prove that the accused is *sane*—and why? Because the law presumes sanity, and presumes it with sufficient strength to support a verdict of guilty without proof of it. The defendant may prove by way of defence that the man is not dead, or that he did not kill him, or that if he did, he didn't do it with malice, or he can prove that he was insane. Insanity is matter of defence. He who affirms must prove, and what degree of proof has he to make? What is the extent of that burden? He has got to prove that he is insane by the preponderance of the testimony.

You saw in this case the defendant putting up witnesses here in reply to the State's case to prove that he is insane. The State, if you remember, didn't say one word about the sanity of the defendant. They put up proof to show that the old woman had been killed, and that the defendant killed her, but didn't say one word about the sanity of the defendant. The first you heard of the sanity of the defendant was by the defence. In reply to that the State put up its testimony on that line. Now, which outweighs the other: that in favor of his insanity, or that in support of his sanity? Now, if the defendant has satisfied you by the preponderance of the testimony that he is insane, you will acquit him. No further burden is thrown upon the State to establish his sanity. But all the testimony is in, and in weighing that testimony, if you decide that the preponderance of the testimony is in favor of the theory of insanity of the defendant, he is entitled to an acquittal. That is sufficient to raise a reasonable doubt in your mind of the existence of an essential element of the crime, and you should give the defendant the benefit of it and acquit him. So, to repeat and make it clear to you, he who avers insanity must prove it, and need prove it by a preponderance of the testimony, because then he raises a reasonable doubt as to his sanity, he is entitled to an acquittal.

*Sixth.* "That if by reason of mental derangement at the time of the act, the prisoner had not power to control the disposition or impulse to commit the deed, he should be acquitted." I cannot charge you that, for I do not think that is the law. I have told you already as to what degree of proof is devolved on the defendant when he sets up insanity as a defence. Now, what

must he prove? What state of mind must he show? Right here is our own law, and I will read it to you (The court here read from *State* v. *Bundy*, 24 S. C., 439): "In order to relieve himself of responsibility from a criminal act by reason of mental unsoundness, * * * he is punishable as if no mental disease existed."[1]

Now, you will see that mere mental weakness is not insanity. What is the nature of the mental disease that will deliver him from the consequences of a criminal act; what is it? This case—Bundy—settles it. His mind must be in such a state that he is unable to know that his act is wrong, morally or legally. He don't know that he will be punished for it, and whenever that state of mind exists, he is not responsible for it. Some of you may have heard—and not a great while ago—of a religious fanatic in Massachusetts, who believed that God had commanded him to kill his little baby girl, and he did it because he believed it was right. He didn't think it was wrong. He thought it was right, and he was not punished for it. Now apply that here: was this defendant under a mental delusion? Did he know that to drive that axe into his wife's head was wrong? If he knew it was wrong and persisted in doing it, no matter if his mind was insane, he was just as punishable as the sanest man in Pickens County, and therefore I cannot charge you this request: (6) "that if, by reason of mental derangement at the time of the act, the prisoner had not power to control the disposition or impulse to commit the deed, he should be acquitted." If he knows that his meditated deed is wrong, he *must* control himself at his peril. That is the law. Have you known men killed in Pickens County under an impulse of anger that was uncontrollable at the time? If so, that act is not excusable by reason of the uncontrollable anger. That is murder or manslaughter, according to the provocation. If he knows the act is wrong, he must control himself at his peril. I am further requested to charge you:

*Seventh.* "If, from all the testimony adduced, the jury are in reasonable doubt as to the sanity of the prisoner, they should

[1] It is printed thus in the Brief. It is intended doubtless to indicate the beginning and ending of the extract read by the judge from page 445.

[REPORTER.

find the prisoner 'not guilty.' " That is the law, and I so charge you.

*Eighth.* "If, from all the testimony, the jury are satisfied that the prisoner, by reason of physical and mental derangement at the time of the homicide, was incapable of forming that premeditated and formed design which it takes to constitute murder, they should not find the prisoner guilty of murder, but may find him guilty of manslaughter, unless, under the testimony, he is entitled to an acquittal." Well, I will charge you that, because, in order to constitute murder, there must be malice. What is malice? Malice is evil intent, and intent to kill is malice, and intent to violate the law is malice. Malice does not consist alone in a formed design to kill. Malice is purpose; that from which you act, and therefore if a man, by reason of mental disease, is incapable of forming an evil purpose—why, then he is not responsible for his act. He must be able to judge of the nature of his act, whether it is right or wrong. If he is incapable of forming an evil purpose, he would not be guilty of murder.

Now, I don't understand the defence to deny that it was from the act of the defendant that the deceased died. The rule of law is, that when a killing is proven, the law will imply evil intent and make the killing murder. (The solicitor here introduced testimony to show that this defendant had said that he had killed his wife.) If you believe that the defendant killed the deceased, it was not necessary that he should go further and prove malice, prove evil intent in the case, because where, as I have said to you, the killing is proven and no more, the law will imply malice and make the act murder; but when all the facts and circumstances of the killing are in evidence, then the jury must say from the testimony what was the intention with which the act was committed. Then it becomes a matter of proof, no implication any longer.

You are to first pass upon the nature of that act—whether it was murder. Now, you first consider whether he killed her with malice; whether his act was prompted by evil intent, an intent to do wrong, an intent to injure her. In considering that question, if there is any testimony in the case that satisfies you that he had legal provocation for his act, that is, that she committed

any attack upon him, and in consequence of that attack on him he killed her, that is not murder. But if he killed her without provocation, then that is murder—if he is a sane man; and that brings up the question of sanity. If he was an insane man, insane to the degree and extent I have pointed out to you, why, then he is not guilty. If the testimony does not support the theory that he did not know that his act was wrong and punishable, then the presumption of sanity stands, and he is responsible for his act.

Now, in order to convict a man of murder, you must be satisfied beyond doubt that he killed a human being, and you must be satisfied beyond a reasonable doubt that he did it with malice, and you must be satisfied beyond a reasonable doubt that he was sane and that he did know his act was wrong and punishable. If you are satisfied of all those three things beyond a reasonable doubt, say "guilty;" if you are not satisfied of all those three things beyond a reasonable doubt, say "not guilty." The form of your verdict, if you should find him guilty of manslaughter, will be, "We find the defendant guilty of manslaughter."

The defendant was found guilty and sentenced to be hanged. He appealed upon eight exceptions.

The first exception alleged error in refusing defendant's first two requests to charge.

*2nd Exception.* Because his honor erred in instructing the jury that all that was necessary to constitute murder was that one charged with the killing of another, "should have conceived the design to commit an assault upon him, or an assault and battery upon him, and in consequence of that act he dies; that is murder, whether he meant to kill him or not."

*3rd Exception.* Because his honor erred in charging the jury that legal provocation was where one "in any way rudely offers or produces physical contact by which anger is aroused and the blow is inflicted and death ensues;" and further restricted the provocation in this case to an attack upon the accused by the deceased.

The fourth exception alleged error in refusing the 4th and 5th requests to charge.

6—30

*5th Exception.* Because his honor erred in charging the jury :
"Now, if the defendant has satisfied you by the preponderance of
the testimony that he is insane, you will acquit him.  No further
burden is thrown upon the State to establish his sanity."

The sixth exception alleged error in refusing the 6th request
to charge.

*7th Exception.* Because his honor erred in charging the jury
that if defendant "knew it was wrong and persisted in doing it,
no matter if his mind was insane, he was just as punishable as
the sanest man in Pickens County."

*8th Exception.* Because his honor erred in charging the jury
"that when a killing is proved, the law will imply evil intent and
make the killing murder, and that it was not necessary that the
State should go further and prove malice ; all the circumstances
of the homicide having been disclosed by the evidence for the
prosecution."

*Messrs. Child & Carey* and *J. E. Boggs*, for appellant.

*Mr. Orr*, solicitor, contra.

January 3, 1889.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The defendant was indicted
and tried at the July term of the Court of General Sessions,
1888, for Pickens County, for the murder of his wife, Jane Alex-
ander.   He was convicted, and now appeals upon exceptions to
his honor's charge to the jury, alleging error both as to matters
charged and in refusals to charge.

The two first exceptions impute error, because his honor de-
clined to charge as requested, that in order to constitute murder,
the testimony must satisfy the jury that there was a premeditated
and formed design *to take life* on the part of the accused before
the commission of the act, and that the killing took place under
this premeditated and formed design.   His honor declining to
charge as requested, charged that "murder was the killing of a
human being with malice aforethought.   Malice does not consist
alone of a formed design to kill another.   For instance, one man
meets another on the street and an altercation ensues, and raises

a cane for the purpose of striking him, and strikes the blow and death ensues, that is murder. He may not have formed a design to kill him, but to strike, and in striking him killed him ; that is murder. That is the difference between the request and my view. All that is necessary is that he should have conceived the design to commit an assault upon him, or an assault and battery upon him, and in consequence of that he dies. That is murder, whether he meant to kill him or not. A formed design to take life is not necessary to make a killing murder."

In other words, the substance of his honor's charge was, that murder might be committed, as the result of some illegal act, whether the design to take life was *actually* present or not. This was in accordance with the common law as found in Blackstone, where he says : "And in general, where an involuntary killing happens in consequence of an unlawful act, it will be either murder or manslaughter, according to the nature of the act which occasioned it. If it be in prosecution of a felonious intent, or in its consequences naturally tended to bloodshed, it will be murder ; but if no more was intended than a mere civil trespass, it will amount only to manslaughter."

2nd. His honor was requested to charge that where insanity is raised as a defence by evidence engendering a doubt, it devolves upon the State to remove this doubt and to establish the sanity of the accused beyond all reasonable doubt. This was declined, and very properly ; because insanity is a defence, and whether sustained or not, must, like any other defence, depend upon the preponderance of testimony, for or against ; weighed and balanced by the jury after it is all out. *State* v. *Paulk*, 18 S. C., 515 ; *State* v. *Coleman*, 20 *Id.*, 452 ; *State* v. *Bundy*, 24 *Id.*, 439.

3rd. His honor was requested to charge "That if by reason of mental derangement at the time of the act, the prisoner had not power to control the disposition or impulse to commit the deed, he should be acquitted." It seems that the effort here was to get the judge to announce the doctrine of irresistible or uncontrollable impulse as distinguished from insanity—that a person though not absolutely insane, or demented to the extent of not knowing the difference between right and wrong, or not incap-

able of knowing the moral character of an act, yet might be led on by an uncontrollable impulse to commit the deed charged, and therefore he should be held irresponsible if committing it under such circumstances. His honor declined to make such charge to the jury ; on the contrary, he charged that mere mental weakness was not sufficient to exempt one from responsibility ; that it required insanity, and insanity to the extent of destroying a knowledge of the wrongfulness of the act, morally and legally, before exemption could be plead ; that irresistible impulse could not be interposed as long as the accused knew that the act which he was committing was a crime morally, and punishable by the laws of his country ; that such knowledge made it imperative that he should control himself at his peril. Without going further, we think his honor's charge was in accordance with the doctrine laid down in this State in the case of *State* v. *Bundy* (24 S. C., 445), where this court sustained the Circuit Judge in holding that the true test of responsibility was knowledge "that the act committed was wrong, or criminal, or punishable, either the one or the other," because, said the Circuit Judge, "notwithstanding his mind may be diseased, if he is still capable of forming a correct judgment as to the nature of the act, as to its being morally or legally wrong, he is still responsible for his act and punishable as if no mental disease existed at all." This court said : "We cannot say that this was error of law." ·

His honor charged, "That where the killing is proven, and no more, the law will imply malice and make the act murder ; but when all the facts and circumstances of the killing are in evidence, then the jury must say from the testimony what was the intention with which the act was committed. Then it becomes a matter of proof—no implication any longer." And this was excepted to as error. We see no error in it, certainly none of which the prisoner could complain ; on the contrary, it was as favorable to him as the law allowed.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.