7632

## STATE v. DUNCAN.

1. ATTORNEYS.—Permitting solicitor in argument to say there had been four homicides committed in the vicinity of the one now being tried is error, but it is held not prejudicial here as the record shows no other verdict could have been found from any reasonable view of the evidence, and counsel for defendant first injected extraneous matter into the argument, and the solicitor told the jury these other homicides had nothing to do with this case.

2. SELF-DEFENSE—ISSUES.—Whether the language used by defendant to deceased was such as would reasonably provoke a physical encounter is for the jury, and not for defendant.

3. CHARGE.—Hypothetical statement of fact followed by a statement of the legal result is not a charge on the facts.

4. IBID.—In explaining the difference between murder and manslaughter, the statement, "now, what spirit of the breast did Duncan kill Brooks'

out of?" when considered with the whole charge and the explanation then being made, is not a statement of a fact denied in the case.

5. EVIDENCE—CHARGE.—Exclusion of the cause of the separation of defendant and his wife, and saying "it is bad enough to know that she quit him," is not error, and the remark cannot be construed as a reflection by the Judge on the character of the witness for veracity or otherwise.

Before GAGE, J., Aiken, Fall term, 1909.    Affirmed.

Indictment against Mark Duncan for murder of William Brooks.    From sentence on verdict of manslaughter, defendant appeals.

*Messrs. Hendersons,* for appellant, cite: *Prosecuting attorney should not be permitted to make comments outside the evidence:* 17 Ency.; 926; 2 Ency., P. & P., 727; Weeks on Attorneys, sec. 112; Proffatt on Jury Trials, sec. 250; 13 S. E., 131; 70 Am. St. R., 499; 48 Am. St. R., 267; 85 Ga., 297; 9 Am. St. R., 559; 12 Tex. App., 583; 150 U. S., 81; 149 U. S., 67; 26 S. C., 118; 77 S. C., 408; 81 S. C., 29. *Effect of opprobrious words on plea of self-defense:* 75 S. C., 510.

*Solicitor Byrnes,* contra, cites: *Argument of counsel is controlled by trial Judge:* 75 Ind., 219; 33 N. E., 431; 102 S. W., 812; 10 N. E., 916; 85 S. W., 226; 46 S. W., 195. *Solicitor may respond to argument of defendant's attorney:* 55 S. W., 819; 64 S. W., 1058; 38 So., 257; 111 S. W., 348. *Effect of opprobrious words:* 75 S. C., 500. *Remarks about separation of defendant and wife not prejudicial:* 39 S. C., 500.

July 18, 1910.    The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.    Appellant was convicted of man-slaughter for the killing of William Brooks.    He and

Brooks had a fight on Wednesday night about eight o'clock, in which appellant admitted that he used his knife and tried to cut Brooks, but did not know whether he had done so or not. After they fought some time, Brooks ran away, and appellant pursued him some distance, but he gave up the pursuit, and returned to the house in front of which the fight occurred, and asked for a gun, saying that Brooks had cut him. He then reported the matter to the town constable, who, with a crowd, accompanied also by appellant, went in search of Brooks, but he was not found until the following Friday, when his dead body was found in a field near the place where the fight occurred. His jugular vein was cut, and he died of hemorrhage. There was testimony that Brooks had been drinking during the afternoon of Wednesday with two other men, and that one of them had been heard to threaten, after they had separated, to find him and whip him, because he had carried off their liquor. But there was no testimony that they, or either of them, or any other person had any difficulty with Brooks, after the fight with appellant, or even that any one saw him, until his dead body was found.

The following statement is taken from the record: "During the course of his argument before the jury, Mr. D. S. Henderson, of counsel for the defense, referred to the policy of newspapers crying for conviction of persons charged with homicide, stating he was tired of it. The solicitor, in opening his argument to the jury, referred to the remarks of Mr. Henderson, and stated no such charge could be made against Mr. Henderson, because he was always asking for acquittals; that at a former term, he, Mr. Henderson, had stated before a jury the number of acquittals he had secured in homicide cases. At this point, Mr. Henderson objected, stating: The solicitor, in his argument to this jury, has no right to say anything about my acquitting people, and I object to it, and want my objection put on the record. I call him to

order. The solicitor: I withdraw that, then. The Court: You have no right to argue that, Mr. Solicitor. Proceeding, the solicitor stated: But, if everybody is not guilty, it is remarkable that it should be necessary for four homicides to have been committed within a radius of four miles of Bath. Mr. Henderson: I want to call the solicitor to order again. He has no right to say to the jury that within a radius of four miles of Bath four homicides have been committed. The Court: Is that a fact? The solicitor: Yes; there are four indictments in this Court so alleging, and counsel will admit it. Mr. Henderson: There is no such testimony in this case. The Court: I understand, if it is a matter of public record, I think the solicitor has a right to refer to it. Mr. Henderson: I object. The Court: Yes, sir. The solicitor stated that everybody knew that there were four indictments for such homicides, and counsel for the defense couldn't deny it, but that all this has nothing to do with the facts of this case. As said by Mr. Henderson, every case, like every tub, must stand on its own bottom."

Error is assigned because the Court allowed the solicitor, over the objection of appellant's counsel, to state to the jury that four homicides had been committed within four miles of Bath, the place of the homicide in question.

There can be no doubt that the ruling was erroneous. The fact that other homicides had been committed had no relevancy whatever to the issues before the Court in this case. The only question which has given this Court serious concern is whether the reference to other homicides, made, as it was, under the sanction of the Court, was so prejudicial to appellant as to call for a reversal of the judgment.

Counsel on both sides in every case, but most especially in criminal cases, should be careful not to inject into the case prejudicial matter, by way of statement or argument, which does not properly arise out of the evidence before the Court, or inferences which may reasonably and legitimately be drawn from it. Within the four corners of the evidence,

great latitude in argument is allowed. But it is the duty of the Court, of its own motion, to check any departure from the record. And when abuse of the privilege of argument is allowed, against objection, to such an extent that it appears probable that the verdict was thereby affected, a new trial will be granted. The law guarantees every litigant a fair and impartial trial, and this has not been secured, where the verdict has been influenced by considerations outside of the evidence.

But, as said in *State* v. *Robertson,* 26 S. C., 118, 1 S. E., 443 : "It is often a matter of difficulty to draw the line sharply between legitimate argument and unauthorized statement—between what is and what is not allowable, and as this pertains to the conduct of the cause, it must, to a large extent, be left to a wise discretion of the Circuit Judge."

In *State* v. *Williamson,* 65 S. C., 248, 43 S. E., 671, the Court said : "It is undoubtedly the duty of the Circuit Court, when appealed to, to repress any flagrant breach by counsel of the rules governing fair and legitimate argument, and for manifest abuse of discretion in this regard, from which it is probable that defendant was prejudiced, this Court would set aside the verdict." ·

It is argued that it is impossible to say when and to what extent the case of a litigant is prejudiced by the unauthorized statements of counsel. But it certainly will not do to say that for every departure from the record, the verdict of the jury will be set aside. If the record shows that no other verdict could have been found upon any reasonable view of the evidence, we are safe in concluding that no harm was done. If, however, an examination of the record and consideration of all the circumstances—imputing fair and average intelligence and honesty of purpose to the jury—leads to the conclusion that the result was probably affected, then, we think, a fair and impartial administration of the law demands a new trial.

In deciding the question, it is not improper to consider the circumstances under which the alleged abuse of the privileges of argument arose.

When one attorney injects extraneous matter into the case, he arouses a strong temptation in his opponent to reply to it, even though it may be necessary to travel outside the record to do so. And where one so provokes his adversary, he greatly weakens his claim upon the Court to relieve him from the evil consequences thereby brought upon himself. He is the author of his own injury.

Now, in this case, it appears that appellant's attorney was the first to breach the rule of legitimate argument. No doubt his allusion to the crying of newspapers for conviction in homicide cases, and his inveighing against such a course, caused the solicitor to feel that it was incumbent upon him to justify such a course on the part of the press by mentioning the fact that so many homicides had been committed within so small a radius. No doubt, too, defendant's counsel, realizing the powerful influence exercised by the press in enlightening and moulding public sentiment, and in arousing it to civic righteousness, felt called upon to warn the jury lest that sentiment had been so aroused as to demand a victim. But that does not justify or excuse his traveling outside of the record, for his purpose could better have been accomplished by proper requests for instructions to the jury as to their duty under such circumstances, which, coming form the Court, would have had much greater influence with the jury.

The record does not show that the solicitor made any other or further comment than the mere mention of the fact that there were four indictments for homicide on the docket, and concluded by saying: "All this has nothing to do with the facts of this case. As said by Mr. Henderson, every case, like every tub, must stand on its own bottom." We think this went very far to correct his error, for he thereby admitted that the other indictments had nothing

to do with this case, and that it should be tried on its own merits. After a careful consideration of all the circumstances and the testimony in the case, we do not think appellant is entitled to a new trial on this ground. In *Ball* v. *Commonwealth* (Ky.), 85 S. W., 226, the prosecuting attorney said, in his closing argument, that more than a score of men, perhaps, had been killed in the city of the homicide, and nothing had been said about it because the people there were afraid to talk about it; and in *Sturgeon* v. *Com.* (Ky.), 102 S. W., 812, the prosecuting attorney said to the jury: "I have tried to do my duty fairly. It remains, gentlemen, for you to do yours, and the records of this Court show that there are now confined in the county jail some 23 murderers." In both cases, the Court held the remarks were not prejudicial.

In declaring the law of self-defense, the judge charged: "If one man uses bad language—if Duncan used such language to Brooks as might reasonably be expected to bring on a physical encounter, and actually helped to bring on a physical encounter, which resulted in the death of Brooks, then the law closes Duncan's mouth to plead self-defense. That is a matter for the jury to determine. Did Duncan use to Brooks language that was reasonably calculated to bring on a fight, and actually helped to bring it on, and as a result of that fight, was Brooks killed? If so, Duncan is wrong about bringing on the fuss, and cannot plead self-defense."

The errors assigned are: 1. That the jury should have been charged that the defendant would not be deprived of his right of self-defense, "unless the language used by him and his manner of using it were such as to give him personally just reason to suppose that his language to the deceased would probably result in a personal difficulty, and that he actually so believed, or reasonably should have so believed, and that the jury believed he so believed;" and 2. That the charge, that if the jury found certain facts to exist, then

Duncan was wrong about bringing on the fuss, and could not plead self-defense, was a charge on the facts.

We think both assignments are untenable. It certainly would not do to let the defendant be the sole judge of whether the language used by him might reasonably be expected to bring on a difficulty. The jury were the judges of that fact—just as they were of the fact whether the defendant acted in all other respects as a man of ordinary reason, prudence and firmness. When the judge said "such language as might reasonably be expected," etc., it certainly conveyed the idea that it must be such as a reasonable man would expect would bring on the difficulty, whether that man was the person using the language, or the person to whom it was used, or any other. The defendant must be required to measure up to the standard of a reasonable man. *State* v. *McKellar*, 85 S. C., 236.

It has been decided too often to require citation of cases that a hypothetical statement of the facts with a statement of the legal result following thereupon, is not a charge upon the facts.

During the course of his charge, while explaining the difference between murder and manslaughter, the Judge said: "Now, what spirit of the heart did Duncan kill Brooks out of?" It is alleged that this was a charge on the facts, because the Judge thereby conveyed to the jury the impression that, in his opinion, Duncan had killed Brooks, which was denied by the defendant, and contested in evidence and argument.

Standing alone, the sentence quoted appears to be obnoxious to the objection urged. But, when it is considered in the connection in which it was used, and in connection with the whole charge, we are satisfied that the jury did not take it as an expression or even an intimation of his Honor's opinion. For, in response to defendant's first request, the Judge had instructed the jury "that should they find that the State has not proved beyond a reasonable doubt

that the deceased, William Brooks, came to his death by violence at the hands of the prisoner, Duncan, then they should acquit the prisoner forthwith." Again, after he had charged the requests, and was proceeding to deliver his general charge, he instructed the jury as follows: "Now, the first issue for you is, did Duncan kill Brooks? That lies at the threshold of the case; if Brooks is dead, did Duncan kill him, and that is a matter that you will have to determine from the testimony in the case. You have heard the testimony, and you know the place, you have got your common wits about you, and taking all of the testimony into consideration, are you certain beyond a reasonable doubt that Duncan killed Brooks; or, have you a reasonable doubt? If you have a reasonable doubt, stop there and that ends the case."

After submitting that issue to the jury, he then instructed them that, if they were satisfied beyond a reasonable doubt, that Duncan did kill Brooks, they should then proceed to inquire of the circumstances of the killing, and whether it was done in self-defense, or whether it was murder or manslaughter; and, in explaining the difference between murder and manslaughter, the question complained of was asked. The explanation of the law of self-defense and the difference between murder and manslaughter was necessarily based upon the supposition that Duncan killed Brooks. And the Judge expressed what had been assumed merely for the purpose of explaining and declaring the law in that view of the case. Under these circumstances, we are satisfied the defendant suffered no prejudice.

On cross-examination of one of defendant's witnesses, the solicitor asked him: "Who supports your wife?" He answered: "She supports herself at the present time. I supported her until a short time ago." On the examination in reply, in response to the question by defendant's counsel, the witness stated that he and his wife did not live together, but were on good terms. Defendant's

counsel then asked him the cause of their separation, which, upon objection by the solicitor, was excluded, the Judge saying: "It is bad enough to know that she quit him." Error is assigned in refusing to allow the witness to explain why he was separated from his wife, and in making the remark above quoted, which, it is claimed, tended to discredit the witness before the jury. The cause of the separation of the witness and his wife was wholly irrelevant and properly excluded. The remark of the Court complained of was not intended and could not have been construed as any reflection upon the character of the witness for veracity or otherwise.

Judgment affirmed.