15690

STATE v. GILSTRAP

(32 S. E. (2d), 163)

Mr. *John M. Schofield,* of Greenville, S. C., Counsel for Appellant,

Mr. *W. A. Bull,* Solicitor, of Greenville, S. C., Counsel for the State, Respondent,

November 10, 1944.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous Opinion of the Court:

The appellant, Charles Gilstrap, a young white man, was tried upon an indictment charging him with rape. The victim was a white girl eleven years of age. He was found guilty, and the trial Court sentenced him to be electrocuted as provided by law.

There are several assignments of error. The first group raises the issue that the trial Judge erred in refusing to grant a new trial on account of alleged intemperate and inflammatory language used by the Solicitor in his closing argument to the jury. It is contended by counsel for appellant that the prosecuting attorney made the following statements which were prejudicial to the rights of the defendant:

"(1) If this boy's color were black it wouldn't take you fifteen minutes to return a verdict of guilty, and he is not entitled to any more consideration than if his color were black.

"(2) Mr. Schofield asked the little girl if the defendant's sex organ entered her sex organ. There is a limit to an attorney's duty to his client, and Mr. Schofield exceeded that duty.

"(3) Place yourself in the position that this girl was your own daughter, and go in and vote as though it were your own daughter who had been raped."

The record shows that the alleged comments were not objected to when made; no ruling thereon was requested from the trial Judge; and the matter was brought to his attention for the first time on appellant's motion for a new trial upon the ground that the quoted statements deprived defendant of a fair and impartial trial. No record was made of the alleged objectionable remarks. They are set forth by counsel for appellant in his brief as recalled by him. But the Solicitor's version is not substantially different. The Court was not requested to instruct the jury to disregard the statements; nor was it asked to declare a mistrial. The proper procedure in a matter of this kind should

have been that outlined in *State v. Meehan,* 160 S. C., 111, 158 S. E., 151, 158, where the rule is stated as follows:

"The conduct of a trial must be left largely to the discretion of the presiding judge. One seeking a new trial because of unfair or improper argument on the part of counsel for the successful party should show these things: (1) That timely objection was interposed to the argument; (2) the substance, at least, of the objectionable language; (3) the failure of the court to sufficiently warn the jury not to consider the improper argument; and (4) that the result was to materially prejudice the right of the losing litigant to obtain a fair and impartial trial."

However, in view of the fact that this is a capital case, we will undertake to pass upon the question presented just as though the foundation therefor had been duly made. The trial Judge in *favorem vitae* adopted the same course in the full consideration he gave to the motion.

The Solicitor disagrees somewhat with appellant's counsel with reference to the exact phraseology of the remarks he made to the jury, wherein he is charged with having injected the racial question into the case. His recollection is that he made this statement to the jury: "Gentlemen, in my opinion, if this were a negro I don't believe the jury would be out long, fifteen or twenty minutes, in arriving at a just verdict in this case."

There are cogent reasons why appellate courts should be careful and critical in recognizing alleged improper statements of counsel in argument as affording ground for reversal. Every case must necessarily depend upon its own particular circumstances. It would seem consistent with the ordinary principles upon which justice is administered, that if in this case the statements complained of were material, and this Court can see, from an examination of the evidence, that they were likely to and probably did wrongly influence and mislead the jury to return a verdict against the de-

fendant to his manifest prejudice, this Court should redress the wrong by reversing the judgment and granting a new trial. But we do not think upon a consideration of the entire evidence that this is such a case. The trial Court upon mature consideration took this view, and we concur in it.

There may be cases, of course, in which the statements of counsel are so prejudicial and flagrant that neither admonition to counsel nor direction to the jury can adequately overcome their injurious effects. *Price v. American Agricultural Chemical Co.,* 178 S. C., 217, 182 S. E., 637; *State v. McGill,* 191 S. C., 1, 3 S. E. (2d), 257.

The rule followed in this State, and we think in most jurisdictions, is that if upon the whole case, it appears to the Court that the defendant was prejudiced by the language used, as the result of which he did not have a fair and impartial trial, it would be the duty of the Court to reverse the case and remand it for a new trial. However, as was said in *State v. Duncan,* 86 S. C., 370, 68 S. E., 684, 685, Ann. Cas. 1912A, 1016: "If the record shows that no other verdict could have been found upon any reasonable view of the evidence, we are safe in concluding that no harm was done." See *State v. Evans,* 202 S. C., 463, 25 S. E. (2d), 492.

The question whether the statements of the prosecuting attorney were fairly calculated to improperly influence the jury, resulting in manifest prejudice, depends in large measure upon the peculiar facts and circumstances of the case.

It seems to us clear that in the quoted statement, the prosecuting attorney in his zeal, and no doubt deeply moved by the enormity of the crime, overstepped the bounds of legitimate argument. There was no justification in this case for making any reference to the negro race, or any member of it. All citizens in this country stand upon an equality before the bar of justice, and the State does not and

should not rely upon prejudice, passion, or sympathy for the enforcement of its laws. All of the parties involved in this case are white people; the defendant is a white man, and the prosecutrix is a white girl. The issue here is not whether the defendant was a white man or a colored man, but whether the evidence satisfied the jury that the defendant was guilty as charged.

In a case less certainly made out than is the one here presented, the remarks of the Solicitor would have raised a serious question as to the propriety of granting a new trial; and but for the fact that the result, as we view the evidence, would inevitably have been the same if the prosecuting attorney had not addressed the jury at all, we should feel constrained to view with graver concern the injection of this extraneous matter into his argument.

What we have said applies with equal force to the other statements hereinabove quoted, ascribed to the Solicitor. The question addressed by appellant's counsel to the prosecuting witness, to which reference was made in his argument by the Solicitor, dealt with an important element in the crime of rape. It was asked as delicately as the circumstances permitted, and no suggestion should have been made to the jury that it was unfair.

Nor can we, in any aspect of the case, justify the following remark admittedly made by the Solicitor, which differs somewhat from the version of appellant's counsel. The prosecuting attorney told the jury to "give the same consideration to this case that you would want twelve men to give to a case if your daughter had been raped; and God forbid that that would ever happen."

An argument of this nature addressed to the jury tends to completely destroy and nullify all sense of impartiality in a case of this kind. Its logical effect is to arouse passion and prejudice. Jurors are sworn to be governed by the evidence and it is their duty to regard the facts of a case impersonally.

We have no idea that the able Solicitor intended to arouse prejudice or passion. But statements of this character are well calculated to bring about this result.

It is argued that the alleged objectionable remarks were justified by way of retaliation to the statement made by appellant's attorney to the jury. He told the jury that if they convicted the defendant "they would have the blood of Mrs. Gilstrap (his mother) on their hands." It goes without saying that this appeal to the sympathy of the jury was improper and should not have been indulged in.

We have held that where counsel for the defense first injects extraneous argument into the case, the defendant is not in a position ordinarily to complain of the argument in reply. *State v. Hilton,* 87 S. C., 434, 69 S. E., 1077, Ann. Cas. 1912B, 1057; *State v. Duncan,* 86 S. C., 370, 68 S. E., 684, Ann. Cas. 1912A, 1016; *State v. Jernigan,* 156 S. Ct., 509, 153 S. E., 480. But in the orderly administration of justice, it is far more desirable and more in the interest of a fair and impartial trial, for counsel on both sides of a case to keep their arguments within the reasonable limits of the evidence. *State v. Robertson,* 26 S. C., 117, 1 S. E., 443.

The evidence in this case leaves not a shadow of doubt as to the guilt of the accused. Reasonable men could not differ upon this issue. It is not necessary to go at length into the loathsome details of the evidence in order to demonstrate the truth of this assertion. The enormity of the crime and the appellant's connection with it are sufficiently shown by the following brief statement. On the afternoon of February 4, 1944, the victim of the attack, an eleven-year-old school girl, boarded a bus in the City of Greenville to return to her home on Sitka Avenue. The appellant was a passenger on the same bus. They were unknown to each other. She alighted at the entrance of Cleveland Park, and proceeded on foot, with her books and school equipment, down a road leading through the edge of the

park. The appellant left the bus along with the prosecutrix, and followed her down the road. When the little girl reached a wooded section of the park she left the road and proceeded along a path through the woods used as a short cut to Sitka Avenue.

The appellant, according to his own testimony, alighted from the bus and followed the little girl with the intention of gratifying his lust. In order to divert suspicion, he did not take the short cut used by her, but walked on up the road. After going several hundred feet, he cut through the woods and bushes and intercepted her. He seized her and carried her farther off into the woods, and threatened her with bodily injury if she made any outcry.

According to the evidence for the State, he released her after he had completed the act of sexual intercourse, and she went home and related the circumstances to her mother. She was promptly taken to a hospital in the City of Greenville and given medical attention, and received treatment there for several weeks following the attack. The medical evidence in the case showed beyond any possible doubt that the little girl had been subjected to sexual intercourse. Her vagina was torn and lacerated, and semen discovered in the vaginal tract.

There is no question here of the identity of the person who committed this crime. The defendant in his testimony admitted all that we have stated except the act of penetration, and the threat of bodily injury. He said that he was over-sexed, and attributed his deed to that fact. He testified that he inflicted the physical injuries by digital insertion.

In such a case, we cannot conceive that the remarks of the Solicitor could possibly have improperly influenced the jury in arriving at a verdict.

Error is alleged because the trial Judge failed to keep the jury overnight in the custody of the Sheriff or bailiff. When the Court adjourned in the afternoon

of the first day of the trial, the jury was allowed to separate and go home for the night. It is argued that prejudice resulted to the defendant because during that night somewhere in the county, or in the City of Greenville, a colored boy had raped a white girl, and this fact was generally known around the courthouse the following morning. Counsel for the appellant contends that it can be presumed that the jury in the case at bar had equal knowledge of this crime along with other persons who attended the trial, and that this was sufficient to influence their verdict.

We have held that the action of the trial Court in keeping together or allowing the separation of a jury, even in capital cases, will not be disturbed unless it is clearly apparent that this discretion was abused. *State v. Williams,* 166 S. C., 63, 164 S. E., 415, 421. No complaint was made to the Court during the trial of the appellant that any improper influences were brought to bear upon the jury as a whole, or any member of the panel. This matter was not presented to the trial Court until the motion for a new trial was made in this case. Nor was it then in any way shown that any prejudice had resulted to the defendant by the failure of the Court to keep the jury together.

In the case of *State v. Williams, supra,* it was said: "In the absence of any showing to the contrary, we must assume that each and every member of the jury sought honestly and impartially, under the law, to discharge his duty; and [to observe] the oath required of a juror." There is no merit in the exception raising this question.

It is next urged that the trial Court erred in refusing to grant a new trial on the ground that an expert witness of the defendant failed at the last moment to attend the trial. It appears that the witness in question was an army doctor associated with the Greenville Health Department, and it is said that his testimony, if it

had been available, would have tended to prove temporary insanity on the part of the accused.

This witness, although he had promised counsel for the defendant to attend and testify, was not subpoenaed. Nor was the Court requested to issue any process to procure his attendance. Nor was a recess or a continuance asked; nor was any affidavit submitted under Rule 27 of the Circuit Court showing what the witness would swear to if present. The defendant when on the stand testified that he was entirely sane when he made the attack upon the little girl; that he knew it was wrong, and that immediately thereafter he attempted to blot out the horror of it by resorting to the drinking of liquor. Under the foregoing circumstances, we see no merit in the exception raising this question.

The appellant was granted permission to include and argue an exception not made in the record, alleging that the trial Judge failed to instruct the jury that it could bring in a verdict as to insanity if the evidence warranted it. We assume that this exception is taken because the trial Judge when instructing the jury as to the form of their verdict, failed at that time to make any specific reference to insanity. But just prior to this, the law relating to insanity had been fully charged. The jury was told, and we quote: "If you find from the evidence that at the precise time the defendant was in such a condition of mind that he did not know that the alleged act was wrong or criminal or punishable, either one or the other, then your verdict should be 'not guilty,' since, as I have already told you, the defense of insanity is a complete defense when properly made out." In our opinion, the defendant could not have been prejudiced in any way by the failure of the Judge to repeat what he had already stated.

The appellant was also granted the right to review and attack previous decisions of this Court dealing with the doctrine of irresistible impulse as a defense

—notably, *State v. Levelle,* 34 S. C., 120, 13 S. E., 319, 27 Am. St. Rep., 799; *State v. Alexander,* 30 S. C., 14, 8 S. E., 440, 14 Am. St. Rep., 879; *State v. Bundy,* 24 S. C., 439, 58 Am. Rep., 263. Error is assigned because the trial Court refused to charge this principle. This Court in the foregoing cases repudiated the doctrine of irresistible impulse as a valid defense against a charge of crime; and, in *State v. Levelle, supra,* quoted the following with approval from *State v. Pagels,* 92 Mo., 300, 4 S. W., 931: "It will be a sad day for this state when uncontrollable impulse shall dictate a rule of action to our courts." (34 S. C., 120, 13 S. E., 321.) And the Court further stated: "It is a matter that is not susceptible of proof, and to allow a person to escape the consequences of his criminal act by asserting that he acted under an impulse which he could not restrain, although he knew his act to be unlawful, would be dangerous, if not destructive, to the peace of society. See *State·v. Bundy,* 24 S. C., 444, 445 [58 Am. Rep., 263]; *State v. Alexander,* 30 S. C., 74, 8 S. E., 440 [14 Am. St. Rep., 879]. See, also, *Leache v. State,* 22 Tex. App., 279, 3 S. W., 539 [reported also in 58 Am. Rep., 638], where the question is ably and elaborately discussed, and the ruling was in conformity to the view we have adopted."

After mature consideration, we firmly adhere to the rule so forcibly expressed in *State v. Levelle, supra;* and we may add that the doctrine that a criminal act may be excused or mitigated because prompted by an irresistible impulse, where the offender has the mental capacity to appreciate his legal and moral duty in respect to it, has no place in the law.

When this case was called for trial in the Court below, the defendant was unrepresented. The trial Judge appointed Mr. Schofield to represent the defendant, and he did so in the Circuit Court, and on the appeal to this Court. He has discharged the duty and obligation imposed upon him by

the Court with ability and fidelity, and this Court acknowledges his services with appreciation.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR, and OXNER concur.