18408

The STATE, Respondent, v. David WHITE, Appellant
(144 S. E. (2d) 481)

*Messrs. Matthew J. Perry,* of Columbia, *John H. Wrighten,* of Charleston, and *Ernest A. Finney, Jr.,* of Sumter, *for*

*Appellant,*

*R. Kirk McLeod, Esq., Solicitor,* of Sumter, *for Respondent,*

October 13, 1965.

LEWIS, Justice.

This is the second appeal by the defendant from a death sentence for rape. The first was reversed and a new trial ordered because of error in the charge. *State v. White*, 243 S. C. 238, 133 S. E. (2d) 320. Upon a retrial the defendant was again convicted and the death sentence imposed.

While the defendant has appealed upon several grounds, the only question which we need consider is whether the lower court erred in refusing to sustain the objection of the defendant to the following portion of the argument made by the Solicitor to the jury:

"If a snake would bite you or one of your children, would you let him go and bite again? Gentlemen, from the testimony from the stand, I have got a lot more respect for a snake than that brute. How would you like to see him coming in your bedroom or your daughter's bedroom with this butcher knife? * * *

"I don't know whether you have got daughters or not, I believe one or two of you are not married. But everybody has got a mother. Not everybody, but most everybody has got a sister, daughters. Let him go, let him come back to Williamsburg County. Let him come in your wife's bedroom or your mother or daughters, any of them, what would you do? * * *

"How, if this young lady was your sister, how would you feel? How, if she was your wife, how would you feel? How, if she was your daughter, God only knows, how would you feel? Gentlemen, she is all of that to somebody. She is a daughter, she is a sister, she is a wife. And but for the grace of God that could be your sister, your daughter or your wife. And under those circumstances, gentlemen, what would you do under the testimony you heard from that stand? Mercy to him that shows mercy. Mercy turns her back on the unmerciful * * *.

"Gentlemen, you heard the testimony. I feel in this case very, very strongly and deeply. I feel that each of you do.

But when you go out and deliberate, when you get to thinking about the mercy they are asking, they don't want justice in this case. All they want is mercy. They got nothing to ask you for. Then if you give him justice, exactly what are you going to do? But when you get back there and consider giving him mercy like they are going to ask you for, think about your wife, think about your daughters, think about your sister or your mother, being in the same position as this young lady, with a knife at her throat and a brute on top of her."

Counsel for the defendant made timely objection to the foregoing argument upon the ground that such statements constituted an effort to have the jury identify the facts of this case with their mothers, wives, sisters, and daughters, and was therefore highly prejudicial to the defendant. The objection was overruled, as was a motion by the defendant for a mistrial upon the same grounds. The lower court ruled that the foregoing argument was proper and therefore no attempt to take corrective action was made.

It has long been the rule in this State that a wide discretion is allowed the presiding judge in dealing with the range and propriety of argument of counsel and ordinarily his rulings on such matters will not be disturbed.

However, an improper argument of counsel representing the successful party, which materially prejudices the right of the losing party to obtain a fair and impartial trial, is ground for a new trial where the effect of the improper argument was not sufficiently counteracted by the trial court, and when timely objection was interposed so as to preserve the right to relief. *State v. Gilstrap,* 205 S. C. 412, 32 S. E. (2d) 163. As stated in the cited case: "The rule followed in this State, and we think in most jurisdictions, is that if upon the whole case, it appears to the Court that the defendant was prejudiced by the language used, as the result of which he did not have

a fair and impartial trial, it would be the duty of the Court to reverse the case and remand it for a new trial."

A somewhat similar but less inflammatory argument was characterized as follows in the *Gilstrap case*: "An argument of this nature addressed to the jury tends to completely destroy and nullify all sense of impartiality in a case of this kind. Its logical effect is to arouse passion and prejudice. Jurors are sworn to be governed by the evidence and it is their duty to regard the facts of a case impersonally. We have no idea that the able Solicitor intended to arouse prejudice or passion. But statements of this character are well calculated to bring about this result."

The State contends however that, assuming the argument to be improper, it could not have prejudiced the defendant because of the overwhelming proof of guilt, relying upon the decision in *State v. Gilstrap, supra*. The *Gilstrap case* also involved a death sentence for rape. The court there condemned a similar argument but concluded under the circumstances that no prejudice resulted to the defendant, applying the rule recognized in *State v. Duncan,* 86 S. C. 370, 68 S. E. 684, that where the record shows no other verdict could have been found upon any reasonable view of the evidence, a conviction will not be reversed because of improper argument of the Solicitor. The argument in question in *Gilstrap* was not as inflammatory as that involved in this case and apparently was partially in reply to extraneous matter first injected by counsel for the defendant. The result reached in that decision is therefore not controlling here.

The issues which the jury had to decide in this case were not confined solely to the guilt or innocence of the defendant but also to the issue of whether their verdict would contain a recommendation to mercy, upon which depended the punishment to be received by the defendant, that is, whether a sentence for a term of years or death. Section 16-72, 1962 Code of Laws.

Under the terms of Section 16-72, whether or not mercy is recommended upon a finding of guilt, and thereby the death penalty avoided, rests within the sole discretion of the jury. The duty of the court in that regard is to see that such discretion is left with the jury, free as reasonably possible of influences which would prevent its fair and impartial exercise.

In view of the absolute discretion of the jury with regard to the issue of mercy, it is impossible to determine whether the argument actually had a prejudicial effect upon the verdict. We do know, however, that in asking the jury to determine such issue by relating the circumstances of the case to their loved ones, the Solicitor injected into the case considerations foreign to the record and calculated to take from the trial the necessary element of impartiality. While we seriously doubt that the argument of the Solicitor had the claimed prejudicial effect and reach our result with reluctance, the probabilities of prejudice to the rights of the defendant are such that we would not be justified in assuming in a death case that it did not result.

The judgment is accordingly reversed and the case remanded for a new trial.

Reversed and remanded.

TAYLOR, C. J., and Moss and BUSSEY, JJ., concur.

LIONEL K. LEGGE, Acting Justice, dissents.

LIONEL K. LEGGE, Acting Justice (dissenting) :

I find myself unable to agree that the portion of the solicitor's argument quoted in the majority opinion affords a sound basis for reversal.

Where a crime has been committed and the evidence points to the defendant's guilt, it seems to me that the prosecuting attorney may without impropriety in his argument refer to the defendant as guilty of that crime. If the crime charged be embezzlement, must the solicitor refrain from arguing to the jury, on the evidence, that the defendant is an embezzler? If,

in a case of aggravated assault and battery, the evidence points to the defendant's guilt of a brutal attack upon a defenseless woman, should the solicitor be forbidden in his argument, having support in the evidence, as it had in this case, to characterize it as brutal, and the defendant as a brute? I do not think so.

Nor do I think that a solicitor would be guilty of impropriety if he were to suggest to the jury, in his argument, that they consider the crime disclosed by the evidence in relation to the members of their families. For society is in reality the prosecutor; and the impact of any crime upon society in general, or upon any segment of society, whether it be pedestrians or bank depositors or children or members of the jurors' families or the jurors themselves, is in my opinion a fair subject for argument on the part of the State.

The majority opinion suggests no disagreement with the views above expressed, except in a capital case, and then only in connection with the jury's power to recommend mercy. If it be true, as I interpret that opinion to imply, that where the death penalty has been imposed our rule in favorem requires or justifies subjecting the propriety of argument for the State to a test more rigid than would be applied in the case of a lesser crime, or of a capital one in which the verdict contains a recommendation to mercy, I am nevertheless convinced that to forbid argument such as is here condemned would unduly restrict the solicitor's function as the representative of society in capital cases.