615 S.E.2d 455

**The STATE, Respondent,**

v.

**Deral L. STANLEY, Appellant.**

No. 4007.

Supreme Court of South Carolina.

Heard June 15, 2005.

Decided June 27, 2005.

26

28

J.M. Long, III, of Conway, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor J. Gregory Hembree, of Conway, for Respondent.

ANDERSON, J.:

Deral L. Stanley (Deral) appeals from his conviction for trafficking in crack cocaine. Deral argues: (1) he was prejudiced when the trial court ordered the imprisonment of a witness who contradicted his prior statement to the police on the witness stand, and then later allowed the witness to return to testify; and (2) the trial court erred by failing to grant his motion for a directed verdict. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On the night of June 12, 2003, Officer Will Lynch, a traffic officer for the City of North Myrtle Beach, was operating a radar detector on Possum Trot Road. He determined that an oncoming vehicle was traveling approximately twelve miles per hour over the posted speed limit. Officer Lynch, who was on a motorcycle, began to follow the vehicle and activated his blue lights. A high-speed chase ensued. Officer Lynch observed two people in the fleeing vehicle. The driver of the vehicle attempted to pass another car, but instead he struck the median, "spun out," and came to a stop without hitting any other vehicles.

As Officer Lynch approached, the driver exited the disabled vehicle and ran across the street into the parking lot of a nearby miniature golf course. The passenger in the vehicle was Deral Stanley. When Officer Lynch pulled up to the scene of the accident, Deral exited the vehicle and began to

walk away. Officer Lynch immediately ordered Deral to get on the ground, handcuffed Deral, and arrested him.

Officer Lynch rolled Deral over to check him for weapons. At that time, he "noticed down on the ground where [Deral] was laying a large bag of what appeared to ... be crack cocaine." Officer Lynch declared: "When I rolled him over, basically, they were right in the area—I guess you would say if I was to roll him back down, basically, around his belly button area." Officer Lynch retrieved the bag, which SLED later determined contained 22.63 grams of crack cocaine. When Officer Lynch patted Deral down, he found $4,220 in cash in his pockets. An inventory search of the vehicle revealed other drug paraphernalia—plastic baggies and digital scales—on the passenger-side floorboard.

The driver of the vehicle was Richard Stanley (Richard), Deral's cousin. Richard was apprehended soon afterward. He was cited for speeding and charged with failure to stop for a blue light and driving without a license.

When he arrived at the police station, Richard waived his rights and gave a statement to Officer Mandy Little. Officer Little wrote down what Richard said and then he signed it at the bottom. The substance of the statement was that Richard was driving Deral to "sell somebody something" when they "saw blue lights." According to Richard, Deral instructed him "to go," and Richard "went because he got scared and had no license."

At trial, the State called Richard. When the State asked Richard if his signature was on his statement, he hesitated. The trial judge sent the jury out and asked whether the statement had been made under oath. The State asserted the statement was made under oath, although defense counsel disagreed.[1] The trial judge then warned Richard that if his trial testimony differed substantially from his prior statement he could be indicted for perjury.

When the jury returned, Richard admitted his signature was on the statement. However, he denied any prior mention

---

1. The statement form contained the following language: "I am giving this statement to *Off. Little.* I volunteer the following information of my own free will, for whatever purpose it may serve.... I certify that the facts contained herein are true and correct."

of selling something, claiming "I ain't said nothing about going to sell nothing." He further denied telling Officer Little that the drugs belonged to Deral. In fact, Richard stated the drugs belonged to him, not Deral. Richard testified he gave the money to Deral during the car chase. He said the baggies and scales were on the center console, but had fallen onto the passenger side floorboard during the accident. Richard declared he threw the bag of drugs when he exited the car, and Deral must have accidentally fallen on it when he was arrested. After his testimony, the trial judge asked Richard to remain in the courtroom because he might be subject to recall.

After the judge dismissed the jury for the afternoon, he called Richard forward and the following colloquy occurred:

THE COURT: Under oath you just testified that you are guilty in trafficking in cocaine. You said that under oath.

MR. RICHARD STANLEY: Yes, sir.

THE COURT: Arrest this individual. Put him in jail. Leave him there. He's either guilty by his own admission in trafficking in cocaine or he's guilty of perjury.

He's to go to jail. Have him indicted first thing in the morning.

I will not permit that sort of conduct in my courtroom.

Now, he's, obviously, either guilty of trafficking in cocaine or he's lying.

You agree with that, [Defense Counsel]. He can't have it both ways.

MR. LONG: That's correct, Your Honor.

THE COURT: Alright.

He will remain in jail.

Let the record reflect that I'm also putting him in jail tonight in the event we will need him for further testimony in the morning. He may be subject to recall, being under that I want to make sure he's here for recall by either the State or the defendant.

But I want him indicted in the morning.

The following morning, the judge appointed the Senior Public Defender to act as counsel for Richard and asked her to

speak with him along with the Solicitor. Richard was not served with a warrant at that time. Richard was then brought into the courtroom and charged as follows:

THE COURT: They [are] going to put you back on the stand under oath and all the Court wants from you—I'm not interested in who you help or hurt. All I'm interested in is you tell us the truth and the absolute truth and nothing but the truth. Do you understand that?

Richard responded, "Yes, sir." Richard then recanted his earlier testimony. Richard professed that the drugs belonged to Deral and that Deral was going to sell them. On cross-examination, defense counsel elicited testimony that Richard had been "locked up" the night before and threatened with service of warrants for trafficking in cocaine and perjury.

After the State rested, defense counsel moved for a directed verdict of not guilty. Additionally, defense counsel moved for a mistrial based on the trial judge's handling of Richard's testimony. The judge denied both motions.

Deral testified in his own defense. Deral claimed Richard was driving because he had been drinking. Deral stated Richard gave him the money during the car chase. He denied possessing the drugs, vowing "I didn't have no drugs on me." On cross-examination, Deral admitted having conversations with Richard in which he learned that Richard would "take the blame" for the drug charge.

At the close of the evidence, defense counsel renewed his motions for a directed verdict and a mistrial. Both motions were again denied. The jury found Deral guilty of trafficking in crack cocaine. Because Deral had two prior convictions, he received the mandatory minimum sentence of twenty-five years. Defense counsel made post-trial motions for a mistrial, a new trial, and judgment notwithstanding the verdict, which the judge denied.

## LAW/ANALYSIS

### I. Motion for Mistrial

Deral argues the trial judge's handling of Richard's testimony was erroneous. Deral alleges prejudice in that the trial judge's conduct amounted to intimidation of a witness. He

claims the judge should have granted his motion for a mistrial. We disagree.

## A. Issue Preservation

Initially, we note this issue may not have been properly preserved. Although defense counsel moved for a mistrial after the State rested, no contemporaneous objection was made. Instead, when the trial judge ordered Richard sent to jail, he stated: "You agree with that, Mr. Long. He can't have it both ways." Deral's attorney replied: "That's correct, Your Honor." Our courts have held a failure to contemporaneously object to the introduction of evidence claimed to be prejudicial cannot be later bootstrapped by a motion for a mistrial. *State v. Lynn,* 277 S.C. 222, 284 S.E.2d 786 (1981); *State v. Moultrie,* 316 S.C. 547, 451 S.E.2d 34 (Ct.App.1994); *State v. Wilkins,* 310 S.C. 81, 425 S.E.2d 68 (Ct.App.1992); *see also State v. Curtis,* 356 S.C. 622, 591 S.E.2d 600 (2004) (contemporaneous objection required to preserve error for appellate review); *State v. Atchison,* 268 S.C. 588, 235 S.E.2d 294 (1977) (noting that if a party fails to make a proper contemporaneous objection to the admission of evidence, he cannot later raise the issue by a motion for mistrial); *State v. Crosby,* 348 S.C. 387, 398–399, 559 S.E.2d 352, 358–59 (Ct.App.2001), *rev'd on other grounds,* 355 S.C. 47, 584 S.E.2d 110 (2003) (holding that no issue is preserved for appellate review if the objecting party accepts the judge's ruling and does not contemporaneously make an additional objection to sufficiency of the curative charge or move for a mistrial).

## B. Mistrial

In any event, even if preserved, we find the issue to be without merit.

■ The decision to grant or deny a mistrial is within the sound discretion of the trial judge. *State v. Vazquez,* 364 S.C. 293, 613 S.E.2d 359 (2005); *State v. Adams,* 354 S.C. 361, 580 S.E.2d 785 (Ct.App.2003); *State v. Thompson,* 352 S.C. 552, 575 S.E.2d 77 (Ct.App.2003). The court's decision will not be overturned on appeal absent an abuse of discretion amounting to an error of law. *State v. Harris,* 340 S.C. 59, 530 S.E.2d 626 (2000); *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998); *see also State v. Arnold,* 266 S.C. 153, 157, 221 S.E.2d 867, 868

(1976) (noting the general rule of this State is that "the ordering of, or refusal of a motion for mistrial is within the discretion of the trial judge and such discretion will not be overturned in the absence of abuse thereof amounting to an error of law.").

" 'The power of a court to declare a mistrial ought to be used with the greatest caution under urgent circumstances, and for very plain and obvious causes' stated into the record by the trial judge." *State v. Simmons,* 352 S.C. 342, 354, 573 S.E.2d 856, 862 (Ct.App.2002) (quoting *State v. Kirby,* 269 S.C. 25, 236 S.E.2d 33 (1977)); *see also State v. Patterson,* 337 S.C. 215, 522 S.E.2d 845 (Ct.App.1999) (stating mistrial should only be granted in cases of manifest necessity and with the greatest caution for very plain and obvious reasons). The granting of a motion for a mistrial is an extreme measure which should be taken only where an incident is so grievous that prejudicial effect can be removed in no other way. *State v. Beckham,* 334 S.C. 302, 513 S.E.2d 606 (1999); *Adams,* 354 S.C. at 377, 580 S.E.2d at 793.

A mistrial should only be granted when "absolutely necessary," and a defendant must show both error and resulting prejudice in order to be entitled to a mistrial. *Harris,* 340 S.C. at 63, 530 S.E.2d at 628; *Simmons,* 352 S.C. at 354, 573 S.E.2d at 862; *see also State v. Council,* 335 S.C. 1, 515 S.E.2d 508 (1999) (finding mistrial should not be granted unless absolutely necessary; to receive mistrial, defendant must show error and resulting prejudice). "The less than lucid test is therefore declared to be whether the mistrial was dictated by manifest necessity or the ends of public justice." *State v. Prince,* 279 S.C. 30, 33, 301 S.E.2d 471, 472 (1983). "Whether a mistrial is manifestly necessary is a fact specific inquiry." *State v. Rowlands,* 343 S.C. 454, 457, 539 S.E.2d 717, 719 (Ct.App.2000).

## C. Section 16–9–10

Deral contends that Richard's testimony at trial was not perjury because the police statement was not made under oath. We disagree.

Section 16–9–10 of the South Carolina Code provides in pertinent part:

(A)(1) It is unlawful for a person to wilfully give false, misleading, or incomplete testimony under oath in any court of record, judicial, administrative, or regulatory proceeding in this State.

(2) It is unlawful for a person to wilfully give false, misleading, or incomplete information on a document, record, report, or form required by the laws of this State.

S.C.Code Ann. § 16–9–10 (2003).

 "Giving false testimony at trial constitutes the felony of perjury and subjects the perjurer to a fine and/or up to five years imprisonment." *Collins v. Doe*, 343 S.C. 119, 124, 539 S.E.2d 62, 64 (Ct.App.2000), *rev'd on other grounds*, 352 S.C. 462, 574 S.E.2d 739 (2002). Perjury or false swearing may constitute contempt of court. *See, e.g., Crute v. Crute*, 86 Ga.App. 96, 70 S.E.2d 727 (1952).

 In the case *sub judice*, Richard's initial trial testimony directly contradicted his prior testimony given in a police statement. Giving false information in a document or report required by the laws of this State is perjury. *See* S.C.Code Ann. § 16–9–10(A)(2). Thus, if the information given to Officer Little was false, Richard was guilty of perjury. If the information was true, Richard perjured himself on the stand by contradicting it under subsection (A)(1).

### D. Arrest of Witness

 Deral maintains he was prejudiced when Richard was arrested and sent to jail, and then later returned to reverse his prior testimony. This assertion is meritless.

 "It is the duty of the court to exercise supervision and control over the witnesses in attendance at the trial." 23A C.J.S. *Criminal Law* § 1191 (1989). In South Carolina, it is firmly settled that the presiding judge has the right to order the arrest of a witness in open court who has made contradictory statements amounting to perjury. The supreme court addressed this issue in *State v. McKay*, 89 S.C. 234, 71 S.E. 858 (1911):

When the witness Purvis came off the stand, the solicitor ordered the sheriff, in open court, to arrest him and take him to jail to answer an indictment for perjury. This was

done against defendant's protest. It is alleged that this was prejudicial to defendant, because it was calculated to intimidate any other witness from varying the testimony which he had given at the preliminary investigation. There is nothing in the record tending to show any such prejudice. It is purely conjectural and barely possible, but highly improbable. Therefore it affords no ground for reversal. On the contrary, we are inclined to commend prompt action by those charged with the administration of the law, when it has been flagrantly violated; and we are of the opinion that if perjurers were more invariably and promptly and vigorously prosecuted and punished, there would be fewer miscarriages of justice in our courts.

*Id.* at 236, 71 S.E. at 859. Thereafter, in *State v. Campbell*, 150 S.C. 449, 148 S.E. 472 (1929), the supreme court explained:

The second question is as to the right of the presiding judge to order the arrest of a witness in open court who, in the opinion of the trial judge, has made contradictory statements, which in fact amount to perjury. This question has been settled against the appellant by the case of *State v. McKay*, 89 S.C. 234, 71 S.E. 858 [(1911)]. The trial judge is present in the atmosphere of the trial, and he must, in the administration of justice, uphold the dignity of the courts, and he would be derelict in his duty if he did not take such steps as he conceives it his duty to see that justice is administered in accordance with sound principles of law. It might be said in passing that it does not appear in the case for appeal that the judge actually had the witness arrested, and under the rules of this court no exception can be considered which does not find substantiation in the printed case.

*Id.* at 450–51, 148 S.E. at 473; *see also* H.D. Warren, Annotation, *Statements, Comments, or Conduct of Court or Counsel Regarding Perjury as Ground for New Trial or Reversal in Civil Action or Criminal Prosecution Other Than for Perjury*, 127 A.L.R. 1385 (1940) (citing *McKay* and *Campbell* and noting that South Carolina courts have used language which seems to indicate the mere fact that a commitment for perjury is made or ordered is insufficient to establish prejudice or constitute reversible error, but indicating that such a result may be shown in a proper case).

In *Graves v. State,* 309 S.C. 307, 422 S.E.2d 125 (1992), our supreme court articulated:

Petitioner also alleges that the trial judge's comments on credibility about a defense witness denied him an impartial jury and violated his due process rights. Again, the PCR judge found this issue to be without merit. At the PCR hearing, petitioner alleged that the trial judge's threats of perjury to a witness prejudiced him. Petitioner argues that the trial judge's comments amounted to comments on the credibility of a witness. During cross-examination, the trial judge reminded the witness: "You are under oath subject to perjury. I need to warn you, so you must answer the questions truthfully." Further, he stated: "The jury can hear. They can find out whether or not you are straightforward or not. Those are matters for the jury."

Petitioner argues that this Court should adopt the holding of the North Carolina case of *State v. Rhodes,* 290 N.C. 16, 224 S.E.2d 631 (1976), where the court held that any intimation by the judge in the jury's presence that a witness had committed perjury would be reversible error. *Rhodes,* however, is distinguishable from the present case. In *Rhodes,* the trial judge made a long statement regarding the witness' testimony and he clearly thought she had committed perjury. In *Rhodes,* the North Carolina Supreme Court stated that a judge may caution a witness regarding perjury outside of the jury's presence. However, the court cautioned that any intimation that a witness had committed perjury in the jury's presence is reversible error.

In *Rhodes,* the court set forth several reasons for its holding. The court saw several dangers including the fact that a judge is unlikely to warn a witness about perjury unless he has determined that the witness has committed perjury which is a fact solely for the jury's determination. Secondly, a witness may change his testimony after being threatened with perjury charges. Third, a warning may discourage questioning the witness further.

As to whether the comments could be construed as a factual determination by the judge, the trial judge stated whether the witness committed perjury was for the jury to determine. From a review of the testimony of the witness, the

trial judge's comments did not cause her to change her testimony or discourage further questions.

While these reasons set forth in *Rhodes* are valid, we decline to apply the holding to the present case. Although the trial judge should have refrained from cautioning the witness regarding perjury in the presence of the jury, under the circumstances of this case, we do not think it is reversible error. We find the trial judge's comments do not amount to prejudice which denied petitioner an impartial jury or violated his due process rights.

*Id.* at 311–12, 422 S.E.2d at 127–28; *see also State v. Cooper*, 334 S.C. 540, 546, 514 S.E.2d 584, 587 (1999) ("[T]here is generally no prejudice when the trial court's hostile comments are made outside the jury's presence.").

All courts have inherent power to punish for contempt. *Curlee v. Howle*, 277 S.C. 377, 287 S.E.2d 915 (1982); *State v. Passmore*, 363 S.C. 568, 611 S.E.2d 273 (Ct.App.2005). This power is essential to the preservation of order in judicial proceedings and the due administration of justice. *Id.*

The trial judge acted within his discretion to warn Richard and to take action to prevent the miscarriage of justice by his perjury.

### E. Other Jurisdictions

The South Carolina rule is in accord with that of other jurisdictions. In *State v. Sheffield*, 55 N.M. 150, 228 P.2d 431 (1951), the trial testimony of a State's witness contradicted earlier statements given to police officers. The Supreme Court of New Mexico, citing *State v. McKay* and *State v. Campbell*, amplified:

It appears from the record that, during the progress of the trial, in the presence of the jury, and while Oscar Connally was on the stand testifying as a witness for the State, the court told the district attorney to "enter a contempt charge against this man for perjury and to deliver him to the custody of the sheriff."

The action of the court was within the power and sound discretion of the trial judge. That it might have had a bad effect upon the jury, and thereby prejudiced the defendant's case, was a matter to be considered by the trial judge at the

time he committed the witness to the custody of the sheriff, but we do no[t] think it was error to do so under the circumstances. *State v. McKay,* 89 S.C. 234, 71 S.E. 858; *State v. Campbell,* 150 S.C. 449, 148 S.E. 472; *People v. Hayes,* 140 N.Y. 484, 35 N.E. 951, 23 L.R.A. 830, 37 Am.St.Rep. 572; *Beavers v. U.S.,* 6 Cir., 3 F.2d 860.

▮▮▮▮▮ *Id.* at 431. Thereafter, the Court of Appeals of New Mexico inculcated:

Defendant's assertion that the trial judge's comments resulted in the intimidation of Miss Saiz, causing her to change her testimony against defendant, is a matter of first impression in this jurisdiction. Defendant contends the court overstepped the neutral role assigned to trial judges and impermissibly intruded upon the traditional functions assigned to advocates. Defendant relies upon *State v. Caputo,* 94 N.M. 190, 608 P.2d 166 (App.1980) and *In Re Will of Callaway,* 84 N.M. 125, 500 P.2d 410 (1972).

The test of whether a trial judge has acted impermissibly in intimidating a witness turns on whether the judge's comments were so severe that they resulted in the witness's refusal to testify or to totally change testimony. *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *McNutt v. United States,* 267 F. 670 (8th Cir.1920); *see also* Annot. 127 A.L.R. 1385 (1940).

A trial judge is not required to sit idly by and allow perjury to be committed without bringing it to the attention of proper authorities. *State v. Brown,* 124 Ariz. 97, 602 P.2d 478 (1979). A judge has a responsibility for safeguarding both the rights of the accused and the rights of the public in the administration of criminal justice. ABA Standards for Criminal Justice, § 6–1.1 (2d ed.1980). However, in a jury trial, the court must not in any manner, by demeanor or otherwise, comment upon the weight to be given certain evidence or indicate an opinion as to the credibility of a witness. *See* N.M.U.J.I.Crim. 1.00, 40.20, N.M.S.A.1978 (Repl.1982). It is not error to advise a witness outside the presence of the jury of the consequences of perjury or to caution him about testifying truthfully, when the need arises because of some statement or action of the witness. *Ehrlick v. Commonwealth,* 33 Ky.L.Rptr. 979, 112 S.W. 565 (App.1908).

Determination of whether the actions of the trial court amounted to intimidation of a witness must rest upon the facts of each case. *State v. Harris*, 428 S.W.2d 497 (Mo. 1968); *Young v. United States*, 107 F.2d 490 (5th Cir.1939); *Venable v. State*, 84 Tex.Crim. 354, 207 S.W. 520 (1918). Here, the trial court excused the jury prior to advising the witness as to the penalty for perjury. Outside the presence of the jury, it ordered that she be provided with appointed counsel and recessed the trial to allow her opportunity to consult with an attorney. At the resumption of the witness's testimony the following day, she testified in accordance with her pretrial statement obtained by the prosecution, and which had been previously furnished to the defense. The actions of Judge Cole in cautioning the witness concerning the consequences of possible perjury, and acting to provide her with the assistance of counsel was entirely proper under the circumstances.

*State v. Martinez*, 99 N.M. 48, 653 P.2d 879, 884 (Ct.App. 1982).

In a federal case, the district court expounded:

The petitioner's second allegation is that he was denied a fair trial due to the prejudice of the trial judge. Petitioner's main contention rests upon the fact that he claims that it was prejudice for the trial judge to instruct his brother on the possible consequences of perjury after his brother began to testify on behalf of the petitioner. (The court's remarks were made to the brother outside the presence of the jury). Since the court's advice was given after his brother had completely contradicted the testimony of the police officer, it is apparent that such instruction was necessary and well within the discretion of the trial judge. After an examination of the entire record, it is apparent that this allegation of the petitioner is frivolous and provides no basis for the relief that has been requested.

*Mooney v. United States*, 320 F.Supp. 316, 318 (E.D.Mo.1970). An accused is not prejudiced by proceedings for perjury undertaken against a witness outside the presence of the jury. *See* 23A C.J.S. *Criminal Law* § 1190 (1989). A New York court determined that a defendant was not denied a fair trial when the trial judge warned a witness that he was

subjecting himself to possible perjury charges due to frequent lack of recall, and then allowed the witness to return several days later to continue his testimony. *People v. Stanley*, 133 A.D.2d 654, 519 N.Y.S.2d 761 (N.Y.App.Div.1987), *overruled on other grounds by People v. Butler*, 192 A.D.2d 543, 596 N.Y.S.2d 93 (N.Y.App.Div.1993).

The trial judge, outside the presence of the jury, warned Richard about the consequences of perjury. When Richard persisted in contradicting his prior testimony, the trial judge ordered him committed to jail after dismissing the jury. Richard was given the opportunity to consult with counsel and then was allowed to return and testify after being charged to tell only the truth. Although the jury eventually learned of the threatened charges, Deral has no basis for complaint because his own counsel elicited this information on cross-examination.

The trial judge did not abuse his discretion in denying Deral's motion for a mistrial.[2]

## II. Directed Verdict

Deral contends the trial judge erred in denying his directed verdict motion. We disagree.

On appeal from the denial of a directed verdict in a criminal case, an appellate court must view the evidence in the light most favorable to the State. *State v. Curtis*, 356 S.C. 622, 591 S.E.2d 600 (2004); *State v. Al–Amin*, 353 S.C. 405, 578 S.E.2d 32 (Ct.App.2003). When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Cherry*,

---

2. Deral maintains the trial judge erred in commanding the State to charge Richard with trafficking. Deral avers this conduct violates the separation of powers doctrine in which the Executive Branch is vested with sole and unfettered discretion to decide when and how to prosecute a case. *See State v. Thrift*, 312 S.C. 282, 440 S.E.2d 341 (1994). We do not reach this issue because nothing in the record indicates Richard was ever actually charged with trafficking. *See State v. Campbell*, 150 S.C. 449, 148 S.E. 472 (1929) (noting that no grounds for appeal exist when the record does not substantiate that the conduct complained of ever occurred). Because the nature of the charges would not affect the prejudice to Deral, this issue would be more appropriate for consideration in Richard's trial.

361 S.C. 588, 606 S.E.2d 475 (2004); *State v. McLauren,* 349 S.C. 488, 563 S.E.2d 346 (Ct.App.2002).

■■ If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must find the case was properly submitted to the jury. *State v. Harris,* 351 S.C. 643, 572 S.E.2d 267 (2002); *State v. Follin,* 352 S.C. 235, 573 S.E.2d 812 (Ct.App.2002); *see also State v. Horton,* 359 S.C. 555, 598 S.E.2d 279 (Ct.App.2004) (noting judge should deny motion for directed verdict if there is any direct or substantial circumstantial evidence which reasonably tends to prove accused's guilt, or from which his guilt may be fairly and logically deduced). On the other hand, a defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. McKnight,* 352 S.C. 635, 576 S.E.2d 168 (2003); *State v. Crawford,* 362 S.C. 627, 608 S.E.2d 886 (Ct.App.2005).

■ The trial judge should grant a directed verdict when the evidence merely raises a suspicion that the accused is guilty. *State v. Zeigler,* 364 S.C. 94, 610 S.E.2d 859 (Ct.App.2005); *State v. Wilds,* 355 S.C. 269, 584 S.E.2d 138 (Ct.App.2003). The appellate court may reverse the trial judge's denial of a motion for a directed verdict only if there is no evidence to support the judge's ruling. *State v. Gaster,* 349 S.C. 545, 564 S.E.2d 87 (2002).

■ "A person who knowingly sells, manufactures, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, deliver, purchase, or bring into this State, or **who is knowingly in actual or constructive possession** or who knowingly attempts to become in actual or constructive possession of **ten grams or more of** ice, crank, or **crack cocaine** ... is guilty of ... 'trafficking in ... crack cocaine.'" S.C.Code Ann. § 44–53–375(C) (2002) (emphasis added). Actual possession occurs when the drugs are found to be in the actual physical custody of the person charged with possession. *State v. Ballenger,* 322 S.C. 196, 470 S.E.2d 851 (1996); *State v. Hudson,* 277 S.C. 200, 284 S.E.2d 773 (1981). In order to prove constructive possession, the State must show the defendant had dominion and control, or the right to exercise dominion and control, over either the drugs or the

premises upon which the drugs are found. *Ballenger*, 322 S.C. at 199, 470 S.E.2d at 854. Such possession can be established by circumstantial or direct evidence or a combination of the two. *State v. Brown*, 267 S.C. 311, 227 S.E.2d 674 (1976). Possession requires more than mere presence. *State v. Muhammed*, 338 S.C. 22, 524 S.E.2d 637 (Ct.App.1999). The State must show the defendant had dominion or control over the thing allegedly possessed or had the right to exercise dominion or control over it. *Id.*

In the instant case, the record provides substantial circumstantial evidence reasonably tending to prove Deral's guilt. Viewed in the light most favorable to the State, there was substantial circumstantial evidence to submit the charge to the jury. The arresting officer found a large bag containing more than ten grams of crack cocaine on the ground beneath Deral. He discovered $4,220 in cash in Deral's pockets and plastic bags and scales on the passenger's side floorboard of the vehicle. Deral had been sitting in the passenger seat. Richard's statement to the police that he was driving Deral to "sell somebody something" shows intent to distribute. After Richard recanted, he testified that neither the drugs nor the money belonged to him. Moreover, Richard declared that the bags and scales were Deral's. Furthermore, Deral admitted having conversations with Richard regarding the perjured testimony.

The trial judge did not err in denying Deral's motion for a directed verdict.

## CONCLUSION

We hold that the trial judge did not abuse his discretion by warning a witness, out of the presence of the jury, of the consequences of perjury and committing him to jail when he gave testimony contradicting his prior statement. Deral was not prejudiced when the witness returned and reversed his earlier testimony at trial. There was substantial circumstantial evidence in the record to deny Deral's motion for a directed verdict. Accordingly, Deral's conviction and sentence are

**AFFIRMED.**

STILWELL and WILLIAMS, JJ., concur.