674 S.E.2d 532

**The STATE, Respondent,**

v.

**Jhune HARRIS, Appellant.**

**No. 4514.**

Court of Appeals of South Carolina.

Submitted Feb. 3, 2009.

Decided March 4, 2009.

---

110

Appellate Defender Kathrine H. Hudgins, of the South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General J. Anthony Mabry, Office of the Attorney General, of Columbia; and Solicitor Warren Blair Giese, of Columbia, for Respondent.

WILLIAMS, J.

In this criminal case, Jhune Harris (Harris) argues the trial court erred in refusing to charge the jury on the law of self-defense and accident. Harris also contends the trial court improperly refused to grant a mistrial. We affirm.

## FACTS

Leopold Pierre (Pierre) was at the residence of Angela Gilmore (Gilmore) helping her children clean an upstairs bedroom in anticipation of a family reunion. While Pierre was

helping the children, Gilmore was in the kitchen cooking. Harris, a former boyfriend of Gilmore, walked to the back door of the house and asked if he could come inside. Gilmore informed Harris she had company and perhaps he should return at a different time. Harris responded he had watermelon for the children.

Based on Harris's representation, Gilmore allowed him to enter the house so he could bring the watermelon inside. Harris entered the house without a watermelon and immediately asked Gilmore to call Pierre downstairs. In response, Gilmore unsuccessfully asked Harris to leave her house.

Harris went upstairs several times and confronted Pierre and at least once asked Pierre to go outside and settle the matter like men. Pierre did not comply with Harris's requests. Shortly after this exchange, Pierre came downstairs to retrieve a broom. Harris told Pierre he wanted to talk to him. Pierre refused to speak with Harris and returned upstairs. Harris continued to call Pierre to come downstairs. Eventually Pierre complied and proceeded down the stairs.

As Pierre reached the bottom step or the second to the last step, Harris pulled a gun from his jacket pocket and shot Pierre twice, resulting in his death. Harris next turned his gun toward Gilmore and chased her through her home. During the chase, Gilmore took hold of her son, and they both fell to the floor. Subsequently, Harris shot Gilmore while she was lying underneath her son. Gilmore survived the incident.

Consequently, Harris was charged with murder and assault and battery with intent to kill (ABWIK). At trial, Harris employed a combination of self-defense and accident to justify the shootings. Specifically, Harris testified he saw something "flicker from the back where [Pierre] had his hand," and Pierre lunged at him as Pierre made his way down the stairs.

With respect to Gilmore's injury, Harris stated that after he shot Pierre, he was backing up and tripped, which caused the gun to accidently discharge. The trial court charged the jury with the law of self-defense and accident. Harris took exception to the given charges and submitted specific requests. The trial court denied these requests.

Following the trial, the jury returned verdicts of guilty for both counts. The trial judge sentenced Harris to forty years for the murder charge and twenty years for the ABWIK charge, with the sentences to run concurrently. This appeal followed.

## STANDARD OF REVIEW

Generally, the conduct of a criminal trial is left largely to the sound discretion of the trial court, and this Court will not interfere unless it clearly appears that the rights of the complaining party were abused or prejudiced in some way. *State v. Bridges,* 278 S.C. 447, 448, 298 S.E.2d 212, 212 (1982). As such, an appellate court sits to review errors of law only, and we are bound by the trial court's factual determinations unless they are clearly erroneous. *State v. Baccus,* 367 S.C. 41, 48–49, 625 S.E.2d 216, 220 (2006).

## LAW/ANALYSIS

On appeal, Harris argues the trial court improperly refused to: (1) charge the jury on the law of self-defense as requested; (2) charge the jury on the law of accident as requested; (3) grant a mistrial when the State allegedly elicited improper character evidence testimony; and (4) grant a mistrial based on the solicitor's improper closing statements.

### I. Jury charge

Initially, Harris argues the trial court erred in refusing to charge the law of self-defense and accident as requested. We disagree.

The law to be charged to the jury must be determined by the evidence presented at trial. *State v. Patterson,* 367 S.C. 219, 231–32, 625 S.E.2d 239, 245–46 (Ct.App.2006). In South Carolina, a trial court is required to charge only the current and correct law of this state. *Id.* A jury charge is correct if it contains the correct definition of the law when read as a whole. *Id.* On review, an appellate court considers the charge as a whole in view of the evidence and issues presented at trial. *Id.* To warrant reversal, a trial court's refusal to give a requested jury charge must be erroneous as

well as prejudicial to the defendant. *Id.* Failure to give a requested jury instruction is not prejudicial error where the instructions given afford the proper test for determining issues. *Id.*

If the charge as a whole is reasonably free from error, isolated portions that might be misleading do not constitute reversible error. *Id.* A trial court's jury charge that is substantially correct and covers the law does not require reversal. *Id.* In charging self-defense, the trial court must consider the facts and circumstances of the case at bar in order to fashion an appropriate charge. *State v. Starnes,* 340 S.C. 312, 322, 531 S.E.2d 907, 913 (2000).

Harris submitted the following specific request:

If a defendant is in imminent danger or if defendant's belief that he is in imminent danger of death or receiving bodily harm is reasonable, he need not wait until actual attack or injury or until force is used by the aggressor before exercising the right to use deadly force in self-defense. In other words, defendant need not wait until the assailant "gets the drop on him" in order to be entitled to use force in self-defense.

The trial court refused to include the "gets the drop on him" language. This language originally arose in *State v. Rash,* 182 S.C. 42, 50, 188 S.E. 435, 438 (1936) ("[The defendant] doesn't have to wait until his assailant gets the drop on him, he has a right to act under the law of self-preservation and prevent his assailant getting the drop on him; if it is apparent, or reasonably apparent his assailant is taking steps to get the drop on him, he must take steps first to prevent such assailant from getting the drop on him."). This language has been interpreted to mean a defendant does not have to wait until actually fired upon to use force to defend his life. *State v. Nichols,* 325 S.C. 111, 117–18, 481 S.E.2d 118, 121–22 (1997); *see also Starnes,* 340 S.C. at 322, 531 S.E.2d at 913 (holding that once the right to fire in self-defense arises, a defendant is not required to wait until his adversary is on equal terms or until he has fired or aimed his weapon in order to act).

With respect to this issue, the trial court charged the jury as follows:

You may consider the deceased's conduct[,] actions and general demeanor immediately before the incident as bearing on the deceased's temper and state of mind at the time of the fatal encounter[,] and **the defendant does not have to show that he was actually in danger.** It is enough if the defendant believed he was in imminent danger and a reasonably prudent person of ordinary firmness and courage would have had the same belief. **The defendant has the right to act on appearances even though the defendant's beliefs may have been mistaken.**

(emphasis added).

The trial court's instructions made it clear Harris did not have to wait until he was actually under attack in order to employ force to defend his life. The trial court informed the jury that Harris had a right to act on appearances even if those appearances may have been erroneous. The simple fact that the trial court refused to use the "[gets] the drop on him" language does not render the charge improper. *State v. Burkhart,* 350 S.C. 252, 261, 565 S.E.2d 298, 303 (2002) ("The substance of the law must be charged to the jury, not particular verbiage.").

▇▇ Next Harris contends the trial court erred in refusing to charge the jury on the law of accident as requested. We disagree.

Harris submitted the following charge:

I charge you that where the shooting of a human being is the result of accident or mischance, no criminal responsibility attaches. If it is shown that the shooting was accidental, that it was done while the defendant was engaged in a lawful activity, and was not the result of criminal negligence, the shooting will be excused. A person is legally entitled to arm himself in self-defense, to meet a potential threat, created by the person who was shot or another. If you find that the shooting was caused by accident, then you must find the defendant not guilty.... The burden of proof is not upon the defendant to show that the shooting was accidental, but the burden of proof is upon the State to prove beyond a reasonable doubt that it was intentional.

The trial court charged the law of accident as follows:

Now ladies and gentlemen, the defense has also raised the defense of accident. An act may be excused on the ground of accident if it is shown that the act was unintentional; that the defendant was acting lawfully and that due care was used by the defendant in the handling of the weapon.... [I]f a person is lawfully armed in self-defense and the gun accidently discharges, the defense of accident would apply. The burden is on the [S]tate to prove beyond a reasonable doubt that the act was not an accident but was caused by the negligence or carelessness on the part of the defendant in the handling of the dangerous instrumentality or by unlawful activity by the defendant.

In South Carolina, the defense of accident requires showing the harm caused was unintentional, the defendant was acting lawfully at the time of the incident, and due care was exercised in handling the weapon. *State v. Goodson*, 312 S.C. 278, 280, 440 S.E.2d 370, 372 (1994).

The trial court set out the elements required to satisfy the defense of accident and stated the burden was on the State to prove the act was not an accident. The simple fact that the trial court refused to employ the language suggested by Harris does not render the charge ineffective. *Burkhart*, 350 S.C. at 261, 565 S.E.2d at 303 ("The substance of the law must be charged to the jury, not particular verbiage.").

Additionally, the requested charge and the charge given to the jury are identical in substance. The requested charge and the given charge state: (1) if the defense of accident applies then the act giving rise to that defense is excused; (2) in order for the defense of accident to apply, it must be shown the shooting was accidental while the defendant was engaged in a lawful activity and not be the result of negligence; (3) an individual may be lawfully armed and if the gun accidently discharges the defense of accident would apply; and (4) the burden rests on the State to prove beyond a reasonable doubt the act was not an accident. The suggested charge and the given charge differ only in the language employed, while the substances of both are identical; thus, it was not error to refuse to give the requested charge.[1] *See State v. Clary*, 222

---

1. Our decision is expressly limited in determining whether the given charges conform to law of South Carolina as it relates to self-defense

S.C. 549, 552, 73 S.E.2d 681, 682 (1952) (holding no error in refusing to charge the precise language requested by the defendant when the jury is correctly instructed in accord with the requested charge).

## II. Mistrial

Harris next argues the trial court improperly failed to grant a mistrial (1) when the State allegedly elicited improper character evidence testimony and (2) based on the solicitor's improper closing statements. We disagree.

The decision to grant or deny a mistrial is within the sound discretion of the trial court. *State v. Stanley*, 365 S.C. 24, 33–34, 615 S.E.2d 455, 460 (Ct.App.2005). The trial court's decision will not be overturned on appeal absent an abuse of discretion amounting to an error of law. *Id.* The power of the trial court to declare a mistrial should be used with the greatest caution under urgent circumstances and for very plain and obvious reasons stated on the record by the trial court. *Id.* A mistrial should only be granted when absolutely necessary, and a defendant must show both error and resulting prejudice in order to be entitled to a mistrial. *Id.* The granting of a motion for a mistrial is an extreme measure that should only be taken if an incident is so grievous that the prejudicial effect can be removed in no other way. *Id.*

Initially, Harris contends the trial court should have declared a mistrial because the State elicited improper character evidence testimony from a witness. We disagree.

The testimony in question focuses on one of Gilmore's children who testified at trial. During cross-examination of this witness, Harris asked numerous questions relating to the positive relationship the two enjoyed prior to the shooting. The following excerpt demonstrates Harris's attempt to convey to the jury the constructive relationship he enjoyed with Gilmore and her children.

Q: I started off asking you some questions about [the] relationship [you had] with [Harris] and ... you agree

---

and accident. We express no opinion on the propriety of the trial court's decision to give these charges under the facts presented.

118

that for some six or seven years it was like a family, correct?

A: Yes.

Q: Y'all lived together?

A: Yes.

Q: [Harris] as well as your mom bought you clothes?

A: Yes.

Q: Took you on trips to New York and Texas and Atlanta?

A: Yes.

Q: Had a great time on the holidays and on birthdays?

A: Yes.

Q: There were a lot of gifts that were not only given by your mom to you and your brothers and sisters but also by [Harris] correct?

A: Yes.

Q: He was very generous to you, wasn't he?

A: Yes.

Q: And y'all were close together?

A: Yes.

Q: You did a lot of activities together?

A: Yes.

. . .

Q: Did y'all go to church together?

A: Yes.

Q: And without going specifically but y'all went to the beach and went to the fair, movies, those kinds of activities together, activities that a family would generally get involved in right?

A: Yes.

Q: And [Harris] would come to your school, correct?

A: Yes.

Q: And your school related activities?

A: Yes.

. . .

Q: And [Harris] had a big, he had a lot of interest in you, not only, when I say you, I'm talking about your sisters and your brothers, too?

A: Yes.

Q: He did a lot of that and your mom was working and he would come and do all of these things at school with all of you when your mom wasn't there sometimes, correct?

A: Yes.

Following this discourse and during re-direct examination of the witness the State posed the following question, "Let me just ask you about going to church with him. . . . [Harris] hit you, didn't he?" Harris immediately objected and subsequently moved for a mistrial. Rather than grant the mistrial motion, the trial court gave the jury a curative instruction. Specifically, the trial court stated, "An objection was raised as to any hitting or spanking of the young man that was on the witness stand or the other children. I sustained the objection and I ask that you disregard the question that was raised by [the State]."

 It is well known "[a] curative instruction to disregard incompetent evidence and not to consider it during deliberation is deemed to have cured any alleged error in its admission." *State v. Walker*, 366 S.C. 643, 658, 623 S.E.2d 122, 130 (Ct.App.2005). In the present case, the trial court's curative instruction explained to the jury they were not allowed to consider the question in their deliberations. The trial court specifically instructed the jury to disregard the question. Thus, any alleged error was cured.

Additionally, the record reveals the witness did not answer the question asked by the State. The State asked the witness whether Harris ever struck him, and before the witness could respond, Harris objected. As noted above, a defendant must show both error and resulting prejudice in order to be entitled to a mistrial. *Stanley*, 365 at 33–34, 615 S.E.2d at 460. Under the facts presented, we fail to see how Harris suffered any prejudice in light of the fact the witness did not answer the question.

Keeping in mind a mistrial should be granted only when absolutely necessary and the curative instruction cured any alleged error the trial court made, we find the trial court did not commit reversible error in denying the motion for a mistrial.

Harris's final argument on appeal is the trial court erroneously failed to grant a mistrial when, in the closing argument, the State made an improper comment in violation of the Golden Rule Argument.

In its closing argument, the State stated:

[Harris] had to fire twice and [Harris is] not sure when he shot Pierre which hand he had the gun in but when he shot accidentally he said, well, I'm right handed. I had it in here. I think he had it in his coat pocket. So as he's got him, got [Harris] running down the stairs. He gets his gun out, ran and shoots twice.... Now, they can't get around this and if y'all believe this, don't leave this jury room, don't leave this jury box and he charges you and just let him go right now. Just let him go.

The Golden Rule Argument is one that suggests to the jurors they put themselves in the shoes of one of the parties. *State v. Rice*, 375 S.C. 302, 334, 652 S.E.2d 409, 425 (Ct.App.2007). In the criminal arena, such an argument is generally improper because it asks the jurors to place themselves in the victim's place. *Id.* Such an argument tends to destroy all sense of impartiality of the jurors, and its effect is to arouse passion and prejudice, thereby encouraging the jurors to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. *Id.*

A trial court is vested with broad discretion in dealing with the range and propriety of a closing argument. *Id.* at 315–16, 652 S.E.2d at 415. An appellate court will not disturb a trial court's ruling regarding a closing argument unless the trial court commits an abuse of discretion. *Id.* This Court must review the argument in the context of the entire record. *Id.* The relevant question is whether the State's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Id.* Once the trial court has allowed the argument to stand, the defendant has

the burden of proving the argument denied him or her a fair determination of guilt or innocence. *Id.* Improper comments during closing arguments do not require reversal if the appellant fails to prove he or she did not receive a fair trial because of the alleged improper argument. *Id.* To warrant reversal, the appellant bears the burden to prove both abuse of discretion and resulting prejudice. *Id.*

In support of his position, Harris cites *State v. White,* 246 S.C. 502, 144 S.E.2d 481 (1965). This case concerned an appeal from a death sentence for rape. *White,* 246 S.C. at 504, 144 S.E.2d at 481. The question on appeal was whether the trial court erred in refusing to sustain an objection following a portion of an argument made by the State to the jury. *Id.* The State made the following comments:

> If a snake would bite you or one of your children, would you let him go and bite again? Gentlemen, from the testimony from the stand, I have got a lot more respect for a snake than that brute. How would you like to see him coming in your bedroom or your daughter's bedroom with this butcher knife? I don't know whether you have got daughters or not, I believe one or two of you are not married. But everybody has got a mother. Not everybody, but most everybody has got a sister, daughters. Let him go, let him come back to Williamsburg County. Let him come in your wife's bedroom or your mother or daughters, any of them, what would you do? How, if this young lady was your sister, how would you feel? How, if she was your wife, how would you feel? How, if she was your daughter, God only knows, how would you feel? Gentlemen, she is all of that to somebody. She is a daughter, she is a sister, she is a wife. And but for the grace of God that could be your sister, your daughter or your wife. And under those circumstances, gentlemen, what would you do under the testimony you heard from that stand? Mercy to him that shows mercy. Mercy turns her back on the unmerciful.

*Id.* at 504–05, 144 S.E.2d at 481–82.

The South Carolina Supreme Court held the argument by the State, which asked the jurors to imagine their mothers, wives, sisters, and daughters in the place of the victim, was

reversible error and ordered a new trial. *Id.* at 507, 144 S.E.2d at 483.

In the present case, reviewing the closing argument in the context of the entire record, the State did not make a Golden Rule Argument. Simply put, the State did not ask or suggest to the jury that they place themselves in the shoes of the victims. Moreover, the comments made by the State in this case do not rise to the level of those in *White.* As such, the trial court did not commit reversible error in denying the motion for mistrial.

## CONCLUSION

Accordingly, the trial court's decision is

**AFFIRMED.**[2]

HUFF and KONDUROS, JJ., concur.

---

**2.** We decide this case without oral arguments pursuant to Rule 215, SCACR.