389 S.C. 599 (2010)
698 S.E.2d 873
The STATE, Respondent,
v.
Reginald R. LATIMORE, Appellant.
No. 4728.
Court of Appeals of South Carolina.
Heard June 8, 2010.
Decided August 18, 2010.
Rehearing Denied September 24, 2010.
*601 Appellate Defender LaNelle C. DuRant, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney *602 General Salley W. Elliott, Assistant Attorney General William M. Blitch, Jr., Office of the Attorney General, of Columbia; and Solicitor Robert Mills Ariail, of Greenville, for Respondent.
WILLIAMS, J.
On appeal, Reginald Latimore (Latimore) claims the circuit court committed reversible error at his trial for failing to register as a sex offender when the circuit court (1) failed to grant a mistrial after it instructed the jury that Latimore was convicted of committing a lewd act on a child, despite a pre-trial stipulation not to disclose Latimore's specific conviction to the jury; (2) failed to grant a directed verdict, despite the State's failure to prove Latimore received notice of a new reporting requirement for sex offender registration; and (3) excluded a probation agent's testimony. We affirm.

FACTS
In 2004, Latimore pled guilty to committing a lewd act upon a child. Upon his release from the Department of Corrections in 2005, he was required under the Sex Offender Registry Act[1] to register as a sex offender with the Greenville County's Sheriff's Office. As a result, Latimore registered on August 3, 2005. Latimore acknowledged that he was required to register each year for life within thirty days after the anniversary date of his last registration. Moreover, Latimore signed a notice form at that time, which stated Latimore "MUST send written notice of a change in address to the county Sheriff's Office within ten days of establishing [his] new residence...." (emphasis in original). Latimore signed an annual registration requirement form, which required his annual registration for 2006 to be completed no later than September 3, 2006.
In July 2006, the Legislature amended section 23-3-460 of the South Carolina Code[2] to require offenders to register *603 twice a yearin their birth month as well as six months after their birth month. Pursuant to the amended statute, Latimore was not required to register until January 1, 2007. When Latimore failed to register with the Sheriff's Office in September 2006, a warrant was issued for his arrest. Latimore was subsequently stopped for a traffic violation in January 2007, and the police arrested him for failing to register as a sex offender.
Prior to the commencement of Latimore's trial for failing to register as a sex offender, the State stipulated not to mention Latimore's conviction for commission of a lewd act upon a child. Despite this stipulation, the circuit court mentioned Latimore's conviction when it read the indictment to the jury and during the jury charge.
During trial, Latimore contended he called Beverly Pettit, the Greenville County sex offender registry coordinator, in February 2006 to obtain approval to move into a new home. Latimore testified Ms. Pettit informed him she had all the required information from him, and his phone call to her satisfied his registration requirements for 2006. Ms. Pettit stated she did not remember Latimore calling her, but she acknowledged his file had been pulled in February 2006 and a new address was inserted in place of the address on file from Latimore's initial registration in August 2005. Latimore stated he was under the belief his phone call to Ms. Pettit in February 2006 prior to his required registration date on September 3, 2006, was sufficient for registration purposes.
After Latimore testified, he sought to introduce the testimony of probation agent, R.J. Gilbert. The circuit court found Gilbert's testimony was irrelevant and would not be considered by the jury, but the court permitted Latimore to proffer Gilbert's testimony outside the jury's presence. Gilbert stated he did not typically tell offenders when they should report because it was not his duty. Furthermore, while he was not Latimore's probation agent, nothing in Latimore's file indicated he was ever informed of the new law and the change in reporting requirements. After the court heard Gilbert's proffered *604 testimony and denied Latimore's directed verdict motion, it charged the jury on the law. In its jury charge, the circuit court stated:
Now, ladies and gentlemen, as you know, this defendant in this case is charged with ... failing to register for the sex offender registry. This is a statutory offense, and Section 23-3-430 of our Code of Laws provides, among other things, that any person residing in South Carolina who has been convicted of or pled guilty to the offense of, among other things, committing a lewd act on a child must register on the sex offender registry.
After the jury exited for jury deliberations, Latimore objected to the circuit court specifying Latimore's conviction in its jury charge in light of the parties' stipulation not to mention it and requested a mistrial. The circuit court denied his motion and sentenced Latimore to ninety days of house arrest. This appeal followed.

ISSUES ON APPEAL
On appeal, Latimore presents three claims of error.
(1) The circuit court erred in denying his motion for a mistrial after it instructed the jury that Latimore was convicted of committing a lewd act on a child, despite a pre-trial stipulation not to disclose Latimore's conviction to the jury.
(2) The circuit court erred in denying his motion for a directed verdict, despite the State's failure to prove Latimore received notice of a new reporting requirement for sex offender registration.
(3) The circuit court erred in excluding the probation agent's testimony.

LAW/ANALYSIS

I. Mistrial Motion
Latimore contends the circuit court erred in denying his motion for a mistrial. We disagree.
The decision to grant or deny a mistrial is within the sound discretion of the circuit court. State v. Harris, 382 S.C. *605 107, 117, 674 S.E.2d 532, 537 (Ct.App.2009). The circuit court's decision will not be overturned on appeal absent an abuse of discretion amounting to an error of law. Id. The power of the circuit court to declare a mistrial should be used with the greatest caution under urgent circumstances and for very plain and obvious reasons stated on the record by the circuit court. State v. Stanley, 365 S.C. 24, 34, 615 S.E.2d 455, 460 (Ct.App.2005). A mistrial should only be granted when absolutely necessary, and a defendant must show both error and resulting prejudice in order to be entitled to a mistrial. Id.
Prior to the commencement of trial, the State stipulated not to mention Latimore's conviction for commission of a lewd act upon a child during trial. When the jury entered the courtroom at the commencement of the trial, the circuit court read the indictment, which stated, "[O]n or about January 1st, 2007, [Latimore] ... failed to register for the sexual offender registry after notice of this requirement and after having been convicted of committing a lewd act on a child." Latimore did not object. Later, during the circuit court's charge to the jury, it again stated, "[A]ny person residing in South Carolina who has been convicted of or pled guilty to the offense of, among other things, committing a lewd act upon a child must register on the sex offender registry." After the jury exited for deliberations, Latimore made a mistrial motion, arguing the circuit court's statement about the lewd act tainted the jury's impression of Latimore and was therefore prejudicial to him. The circuit court denied Latimore's motion.
We do not believe the circuit court's denial of Latimore's mistrial motion was in error. While it was unnecessary to mention Latimore's conviction for commission of a lewd act upon a child during the reading of the indictment or the jury charge in light of the parties' stipulation, we conclude Latimore was not prejudiced. See State v. Carrigan, 284 S.C. 610, 614, 328 S.E.2d 119, 121 (Ct.App.1985) (finding the defendant was not prejudiced at trial for driving under suspension and driving in violation of the Habitual Traffic Offender Act, where circuit court unnecessarily read section of the Act defining terms "habitual offender" and "conviction" after defendant had stipulated to his prior adjudication as a habitual offender). Moreover, his prior conviction as a sexual offender had no *606 bearing on the jury's determination of whether he violated his reporting requirements because his conviction was not a fact in dispute. Thus, any error in commenting on this prior conviction was not prejudicial to Latimore. See Stanley, 365 S.C. at 34, 615 S.E.2d at 460 (holding a defendant must show both error and resulting prejudice in order to be entitled to a mistrial).

II. Directed Verdict Motion
Latimore claims the circuit court improperly denied his directed verdict motion. We disagree.
If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the court must find the case was properly submitted to the jury. State v. Weston, 367 S.C. 279, 292-93, 625 S.E.2d 641, 648 (2006). When reviewing a denial of a directed verdict, an appellate court views the evidence and all reasonable inferences in the light most favorable to the State. Id. at 292, 625 S.E.2d at 648. The circuit court should grant a directed verdict when the evidence merely raises a suspicion that the accused is guilty. State v. Hernandez, 382 S.C. 620, 625-26, 677 S.E.2d 603, 605-06 (2009).
Latimore was charged with violating section 23-3-470[3] of the South Carolina Code when he failed to register with the Greenville County Sheriff's Office by January 1, 2007. Latimore first contends he was not notified of the new bi-annual registration requirements when the statute was amended in July 2006, which violated his due process rights. We disagree.
Latimore relies on Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), for the proposition that the State must prove he received actual notice of his duty to register in order to satisfy due process. In Lambert, a provision in a municipal ordinance of the City of Los Angeles, California required all persons convicted of a felony, whether that conviction occurred in California or another state and was punishable as a felony in California, who remained in Los *607 Angeles more than five days to register as a felon with the Chief of Police. Id. at 226, 78 S.Ct. 240. The police discovered when Lambert was arrested that she had been residing in Los Angeles for more than seven years, and while she had been convicted of a felony, she failed to register with the Chief of Police. Id. After being convicted for failing to register, Lambert appealed to the California Superior Court, which affirmed her conviction. She then appealed to the United States Supreme Court, arguing that the municipal ordinance, as applied, denied her due process of law. Id. at 227, 78 S.Ct. 240.
On appeal, the United States Supreme Court held that Lambert's conviction violated due process because her conduct in failing to register was "wholly passive" and "[a]t most the ordinance is but a law enforcement technique designed for the convenience of law enforcement agencies...." Id. at 228-29, 78 S.Ct. 240. However, the Supreme Court emphasized that in Lambert, "circumstances which might move one to inquire as to the necessity of registration [were] completely lacking." Id. at 229, 78 S.Ct. 240.
We find the registration ordinance in Lambert to be readily distinguishable from the sex offender registration statute at issue in the case at hand. In Lambert, the registration requirement was a general municipal ordinance, whereas our Sex Offender Registry Act is a statewide registration program. Unlike the registration requirement in Lambert, the sex offender registration requirement is directed at a narrow class of defendants, convicted sex offenders, rather than all felons. See State v. Bryant, 359 N.C. 554, 614 S.E.2d 479, 487 (2005) (distinguishing the Supreme Court's holding in Lambert and finding North Carolina's and all other states' sex offender registration statutes are statewide registration programs specifically directed at sex offenders with the ultimate purpose of protecting the public). And, perhaps most importantly, instead of serving as a general law enforcement device, as the United States Supreme Court found the City of Los Angeles' felon registration ordinance, our statute was specifically enacted as a public safety measure based on the Legislature's determination that convicted sex offenders pose an unacceptable risk to the general public once released from incarceration. See S.C.Code § 23-3-400 (2007) (stating because "[s]tatistics *608 show that sex offenders often pose a high risk of re-offending[,]" the Sex Offender Registry Act serves to "promote the state's fundamental right to provide for the public health, welfare, and safety of its citizens...."); Williams v. State, 378 S.C. 511, 515, 662 S.E.2d 615, 617-18 (Ct.App.2008) (internal citation and quotation omitted) ("[T]he purpose of requiring registration is to protect the public from those sex offenders who may re-offend and to aid law enforcement in solving sex crimes.").
Moreover, the statute does not require a knowing or intentional violation of the registration requirement to be subject to punishment. Per the statute's plain language, a person is deemed to have actual knowledge of the duty to register once he or she is arrested for failing to register.[4]See S.C.Code § 23-3-480(A) (2007) ("An arrest on charges of failure to register, service of an information or complaint for failure to register, or arraignment on charges of failure to register constitutes actual notice of the duty to register."). As a result, once Latimore was arrested in January 2007, he was deemed to be on notice of his duty to register, regardless of whether he intended to comply with the registration requirements. See Bryant, 614 S.E.2d at 484 (finding the North Carolina legislature's deletion of the original mens rea requirement from its sex offender registration statute was a clear expression of its intent to make failure to register as a sex offender a strict liability offense under North Carolina law so that no showing of knowledge or intent was necessary to establish a violation of its registration requirements).
Additionally, we note the Legislature clearly contemplated the necessity of notifying sexual offenders of the requirement to initially register in section 23-3-440 when it stated, "The Department of Corrections, the Department of Juvenile Justice, the Juvenile Parole Board, and the Department of Probation, Parole and Pardon Services shall provide verbal and written notification to the offender that he must register with the sheriff of the county in which he intends to reside within one business day of his release." S.C.Code § 23-3-440(1) (Supp.2005 & 2007) (emphasis added). Had the Legislature *609 intended for the State to notify Latimore of the need to register bi-annually, it could have included such language in section 23-3-460. See generally Theisen v. Theisen, 382 S.C. 213, 219, 676 S.E.2d 133, 137 (2009) (finding if the Legislature intended a statute of limitations period to apply only to wills which were informally probated in this state, it could have included such language in the statute); see also State v. Hackett, 363 S.C. 177, 181, 609 S.E.2d 553, 555 (Ct.App.2005) ("In construing a statute, its words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.") (internal citation and quotation omitted). Because no such language was included in section 23-3-460, we find it would be improper to construe the statute otherwise.
Latimore also claims his phone call to Ms. Pettit of the Greenville County sex offender registry in February 2006 in an effort to update his address should be deemed sufficient to comply with the statute. We disagree.
We find the plain language of the statute controls the resolution of this issue. Section 23-3-460 requires an offender to initially register and reregister "each year during the month of his birthday and again during the sixth month following his birth month ... at the sheriff's department in each county where he resides." § 23-3-460(A) (Supp.2009). Latimore's phone call was insufficient to satisfy the clear mandates of section 23-3-460(A), and even if we presume Latimore was not notified of the changes to the statutory scheme, ignorance of the law is no excuse. See Cheek v. United States, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system."); South Carolina Wildlife & Marine Res. Dept. v. Kunkle, 287 S.C. 177, 178, 336 S.E.2d 468, 469 (1985) ("[I]t is a well-settled maxim that ignorance of the law is no excuse.").
Accordingly, we find the State presented sufficient evidence to submit the issue of whether Latimore failed to comply with the registration requirements to the jury. See Hernandez, 382 S.C. at 625-26, 677 S.E.2d at 605-06 (holding the circuit court should grant a directed verdict only when the evidence *610 merely raises a suspicion that the accused is guilty). Thus, we conclude the circuit court did not err in denying Latimore's motion for a directed verdict.

III. Exclusion of Probation Agent's Testimony
Finally, Latimore argues the circuit court erred when it excluded the testimony of a probation agent because this testimony would establish Latimore was never informed of the new registration requirements. We disagree.
The admission of evidence is within the discretion of the circuit court and will not be reversed absent an abuse of discretion. State v. Gaster, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002).
The circuit court refused to permit R.J. Gilbert, a probation agent for Greenville County, to testify at Latimore's trial. In doing so, the court found Gilbert's testimony was irrelevant because the probation department is not required by law to inform offenders of changes in the sex offender registration requirements. The circuit court, however, permitted Latimore to proffer Gilbert's testimony, and during Gilbert's proffer, he stated he was not Latimore's probation agent, and it was not Gilbert's duty to inform offenders of any changes in the law. Gilbert said there was nothing in Latimore's file to indicate he had ever been informed of the changes in reporting requirements.
We agree with the circuit court's conclusion that Gilbert's testimony was irrelevant as to whether Latimore had notice of the new registration requirements. Gilbert was not Latimore's probation agent at the time his registration was in issue, nor was Gilbert responsible for ensuring offenders fulfilled their registration requirements. Even if the circuit court erred in excluding Gilbert's testimony, we fail to see how Gilbert's testimony would have satisfactorily corroborated Latimore's claim that he was unaware of proper registration procedures. See State v. Taylor, 333 S.C. 159, 168-69, 508 S.E.2d 870, 875 (1998) (finding exclusion of certain evidence was proper, and moreover, any error in refusing to admit proffered testimony was harmless when proffered testimony added little favorable evidence for defendant). As a result, *611 Latimore was not prejudiced by the exclusion of Gilbert's testimony.

IV. Conclusion
Based on the foregoing, the circuit court's decision is
AFFIRMED.
HUFF and SHORT, JJ., concur.
NOTES
[1] S.C.Code sections 23-3-400 to -550 (2007 & Supp.2009).
[2] Section 23-3-460(A) (Supp.2009) states, in pertinent part,

A person required to register pursuant to this article is required to register bi-annually for life. For purposes of this article, "bi-annually" means each year during the month of his birthday and again during the sixth month following his birth month. The person required to register shall register and must re-register at the sheriff's department in each county where he resides....
[3] S.C.Code section 23-3-470 states, "It is the duty of the offender to contact the sheriff in order to register[ ] ... [or] provide notification of change of address.... If an offender fails to register[ ] ... he must be punished as provided in subsection (B)." § 23-3-470(A) (2007).
[4] This identical statutory language was in effect at the time Latimore was arrested in January 2007. See § 23-3-480(A) (Supp.2006).